# Exhibit C

```
                                            1
       7CCVMELC          Bail Hearing
  1    UNITED STATES DISTRICT COURT
  1    SOUTHERN DISTRICT OF NEW YORK
  2    ------------------------------x
  2
  3    UNITED STATES OF AMERICA,
  3
  4         v.              07 CR 00907 (SAS)
  4
  5    JOHN MELICHAREK,
  5
  6         Defendant.
  6
  7    ------------------------------x
  7
  8                        New York, N.Y.
  8                        December 12, 2007
  9                        3:30 p.m.
  9
 10
 10    Before:
 11
 11              HON. SHIRA A. SCHEINDLIN,
 12
 12                       District Judge
 13
 13
 14              APPEARANCES
 14
 15    MICHAEL J. GARCIA
 15         United States Attorney for the
 16         Southern District of New York
 16    ELIE HONIG
 17    BENJAMIN GRUENSTEIN
 17         Assistant United States Attorneys
 18
 18    JOHN MERINGOLO
 19         -AND-
 19    BARRY LEVIN
 20         Attorneys for Defendant
 20
 21
 21    ALSO PRESENT:  JOHN LaRAIA, FBI
 22              ANGIE GRIMWOOD, Paralegal
 22
 23
 24
 25
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300
```

```
                                   12
       7CCVMELC              Bail Hearing
 1  them, not a huge amount, worth about $17,000, but that's all on
 2  tape and pretty neatly wrapped up.
 3           The evidence -- I don't want to go too much into it,
 4  but the evidence as whole includes recordings of
 5  Mr. Melicharek, recordings of his co-conspirators talking about
 6  these robberies, the break-ins, testimony from at least two,
 7  possibly more, cooperators, victim testimony from the victim of
 8  the extortion, as well as the people who were tied up and
 9  beaten in their homes.
10           THE COURT:  Well, of course, they shouldn't have any
11  evidence against Mr. Melicharek.
12           MR. HONIG:  They won't be doing IDs.
13           THE COURT:  Right.
14           MR. HONIG:  Although they can provide relevant
15  evidence as to motive and opportunity.
16           THE COURT:  Right.
17           MR. HONIG:  But no, that's correct.  Although the
18  extortion victim will certainly know exactly who he is.
19           THE COURT:  Right.
20           MR. HONIG:  One of the issues that the Court had
21  raised last time is, well, how recent is any of this?  The
22  break-ins were in late '03, late '03; the extortion was in late
23  '04, going into '05.  So to the same extent that the defendants
24  are now offering a little bit more on the bail package, I'd
25  like to offer a little bit more about more recent things that
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
                             13
    7CCVMELC            Bail Hearing
 1  Mr. Melicharek has been involved in.
 2       Mr. Melicharek has -- he has a long criminal history,
 3  I'm not saying it's the most serious one, but he had a 1991
 4  felony for weapons possession, and then misdemeanors, two in
 5  '95 and one in 2000.  So he's not a newcomer to crime, he's not
 6  the most -- he doesn't have the longest rap sheet.
 7       THE COURT:  What were these misdemeanors for?  The
 8  presentence report -- I'm sorry, the pretrial report says
 9  criminal possession of a weapon, that was the one felony in one
10  1991, which is a long time ago, but I don't know what the
11  misdemeanor is for.
12       MR. HONIG:  He has a 1995 gambling misdemeanor and a
13  2000 DUI.
14       THE COURT:  And one other?  You said three.
15       MR. HONIG:  I may have misspoke.
16       THE COURT:  No, it says three in the report, three
17  misdemeanors; one DUI, one gambling.
18       MR. LEVIN:  Your Honor, the gambling are interrelated;
19  they were two separate counts, so it's really one charge.  And
20  that's back in '90.
21       MR. HONIG:  Judge, let me just briefly give the Court
22  a little more information on some of the more recent stuff.
23  And again, these break-ins are '03, the extortion is '04 into
24  '05, non-ancient history.  And it's all mob-connected.  This is
25  all a Genovese --
               SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```

                                14
     7CCVMELC            Bail Hearing
1            THE COURT: It's all what?
2            MR. HONIG: Mob-connected. This is all Genovese
3    family activity, and I'll go into a little more detail on that.
4            First of all, we have -- there's a recording that the
5    defense has had that we produced back with the original
6    discovery, I believe, from October 27th of 2005, where
7    Mr. Melicharek is discussing with the cooperating witness,
8    who's wearing a body wire, his plans to do another violent
9    break-in of another business associate of his. It's about a
10   two-minute clip. I'd like to play it for the Court, because I
11   think it gives an important sense of what this was all about.
12   And this is even more recent than the charged crimes.
13           THE COURT: What year you said?
14           MR. HONIG: October '05.
15           (Audiotape played)
16           MR. HONIG: Before I go any further, there's two
17   voices on the tape. The, I guess, higher-pitched one that's
18   more clearly heard on the tape, that's louder on the tape, is
19   the cooperating witness. The lower-pitched one is
20   Mr. Melicharek. I think it will be clear.
21           (Audiotape played)
22           MR. HONIG: Judge, I mean I think that largely speaks
23   for itself. They are discussing a plan to break in to the
24   business, walk into the business of a person in the garment
25   district in Manhattan, meet him; while dressed as cops, rob him
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

```
                                15
      7CCVMELC            Bail Hearing
 1    of cash. And you heard the reference to weed. And there's
 2    some conversation that precedes that. But that's even more
 3    recent than the charged activity. And I think that gives you a
 4    sense of what the operation was here.
 5            In addition, there are four calls that we've also
 6    produced -- or not calls, body wires, that we've produced to
 7    the defense from January to March of 2006. And in those calls,
 8    Mr. Melicharek talks all about his mob connections, and I'll
 9    talk about some of those in a second. He repeatedly is
10    discussing who that they know might cooperate with law
11    enforcement, and ways to make sure that people don't rat.
12            Mr. Melicharek talks about the fact that he had -- the
13    way to do it is to give the person a lawyer who will let him,
14    Melicharek, know if the client tries to cooperate. Melicharek
15    said he'd done this once; he'd gotten the person a lawyer who
16    would then tell Melicharek if his client ratted. That's
17    obviously obstruction, and it shows you there's a certain level
18    of resources here, there's a level of sophistication and
19    understanding of how to interfere with these processes and how
20    to influence the process.
21            There's also recordings from '06 which they have
22    wherein which Mr. Melicharek's discussing various ongoing
23    crimes. He's talking about helping to arrange a loan shark
24    loan from Joey Leo, who's an associate of the Genovese family
25    and the nephew of the boss of the family, Danny Leo. Kicking
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

16
7CCVMELC           Bail Hearing
1  up money from a Genovese associate to his capo, a man named
2  Angelo Prisco, who's Mr. Melicharek's capo in the Genovese
3  family. Mr. Melicharek talks about splitting proceeds from
4  other activities of his with Mr. Prisco. And he says at one
5  point that he would "do anything" for his capo, for Angelo
6  Prisco. And that's where his priorities lay and always have.
7        You're talking about a person who's charged with just
8  violent -- straight-up violent, really vicious crimes,
9  committed them basically unstopped from '03 until the
10 recordings take us through '06. He's facing an enormous amount
11 of time, he's facing, if convicted on both 924(c) counts, 32
12 years mandatory minimum consecutive, one of them is a
13 brandishing charge, so it's seven years. And then the other
14 one is 25 on top of it.
15        The evidence, I don't want to get too into it, but
16 there's tapes to back up what cooperators say, there's victim
17 testimony, there's crime scene testimony. He's a danger. And
18 I don't think any bail package would address that.
19        MR. LEVIN: Your Honor, if I may respond.
20        THE COURT: Yeah, just one second. All right.
21 Mr. Levin.
22        MR. LEVIN: Your Honor, I'm not going to go through a
23 litany of the factors under 3142, I'm sure the Court is
24 familiar with it. But certainly the nature and circumstances
25 of the crime are a factor the Court has to consider.
            SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300

```
                              17
   7CCVMELC            Bail Hearing
1    The tape that was just played I had not heard before.
2  To the extent I have listened --
3       THE COURT:  Has it been turned over to you?
4       MR. LEVIN:  No, it hasn't.  Well, I'm not going to
5  make accusations against the government.  As your Honor knows,
6  I'm new to the case, but what was turned over to me was April
7  20th, October 23rd, October 25th, and October 27th.  Those
8  particular tapes are not that tape that I just listened to.
9  And I have the transcripts of the tapes that go with that.
10      But be that as it may, I'm not here to dispute whether
11 that tape is an accurate rendition or not.  What I'm here to
12 say to the Court is that, yes, the nature and circumstances of
13 the crime certainly is one factor, a very important factor.
14 But also one has to look to the strength of the evidence,
15 background of the defendant, and whether he is a threat to
16 others.
17      And in regard to that, this Court should be aware of
18 the fact that Mr. Melicharek is an ironworker.  In the last two
19 years prior to his incarceration, he had worked 1700 hours; and
20 the year before that, 1,000 hours.  That pretty much is
21 full-time.
22      He's a family man.  He has two kids.  His wife is a
23 special education teacher.  She's here today.
24      And in regard to the most important issue, whether he
25 is a danger, what the government did not tell this Court is the
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

```
                                             36
    7CCVMELC              Bail Hearing
 1  thoughts after hearing a preview of the evidence. And I want
 2  everybody to know that every once in a while they've been
 3  called on to make good on their signature. It's not common,
 4  but it's happened, and it's pretty painful.
 5          Okay. I have nothing further at this time.
 6  Mr. Riley, do I sign? You're still working on that. All
 7  right.
 8                        *   *   *
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```