# Exhibit B

1

7ANFMELC

```
 1  UNITED STATES DISTRICT COURT
 1  SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x
 2  UNITED STATES OF AMERICA,
 3
 3            v.                    07 CR 907
 4
 4  JOHN MELICHAREK, et al,
 5
 5            Defendants.
 6  ------------------------------x
 6
 7                              New York, N.Y.
 7                              October 23, 2007
 8                              2:30 p.m.
 8  Before:
 9
 9            HON. SHIRA A. SCHEINDLIN,
10
10                              District Judge
11
11                  APPEARANCES
12
12  MICHAEL J. GARCIA
13       United States Attorney for the
13       Southern District of New York
14  BENJAMIN GRUENSTEIN
14       Assistant United States Attorney
15
15  PAUL J. McALLISTER
16       Attorney for Defendant Nicosia
16
17  JOHN N. MITCHELL
17       Attorney for Defendant Gjelaj
18
18  STEVEN R. KARTAGENER
19       Attorney for Defendant Celaj
19
20  JOHN MARINGOLO
20       Attorney for Defendant Melacharek
21
21  SHERYL REICH
22  GERALD LEFCOURT
22       Attorney for Defendant Pipolo
23
23  ALAN NELSON
24       Attorney for Defendant Iuni
24
25  Also present: John Laraia, Special Agent
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17
7ANFMELC

```
 1  that's why people flee.
 2          THE COURT:  No, there are lots of other risks of
 3  flight that I've heard over the years, but the one you're
 4  concerned about is he's facing heavy time.
 5          MR. GRUENSTEIN:  Right.  As far as I know, he's a
 6  citizen --
 7          THE COURT:  That's what I know.  Sometimes there are
 8  people we're told their family ties are abroad.  Okay, I got
 9  the risk of flight picture, now let's turn to danger of
10  community.
11          MR. MARINGOLO:  Your Honor, I submit to you that
12  Mr. Melicharek is absolutely not a danger to the community.
13  Your Honor, we're aware of the crimes charged in this
14  indictment, but those crimes do not determine whether or not my
15  client is a danger to the community.  Also the indictment
16  alleges that my client is an associate of organized crime and
17  that does not automatically render a defendant dangerous, as
18  cited in our brief.  With that said, it should be noted, your
19  Honor, it's been over two and a half years since the
20  allegations in this indictment and it's been over four years
21  since the allegations of this so-called Hobbs Act robbery.
22          Also the Court should be aware that Mr. Melicharek's
23  co-defendant is charged with the same robberies and he was
24  granted bail at the arraignment.  The Court should be aware
25  that pretrial services determined in their report my client is
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

7ANFMELC

1  a candidate for bail.
2           THE COURT: I saw that, too, that's even with the two
3   mistakes. It says there are conditions that could be set to
4   reasonably assure the defendant's return to court. Why is this
5   defendant more risky than Mr. Pipolo?
6           MR. GRUENSTEIN: First of all, I do want to address
7   the issue of the Colombia. I do see it on the first page,
8   where Mr. Melicharek reports that he's been to several South
9   American countries, Colombia and Venezuela, and he does say
10  that his uncle and cousin live in Colombia, so I'm not sure
11  why -- I don't think it's a mistake. He does seem to be pretty
12  much throughout the pretrial services report.
13          THE COURT: Okay.
14          MR. GRUENSTEIN: But I would like to address the issue
15  of Mr. Pipolo.
16          THE COURT: I just asked you that.
17          MR. GRUENSTEIN: Mr. Pipolo is charged, I believe it's
18  in one of these robberies -- is it one or both? In one of the
19  robberies and what he's charged with basically is he provided
20  the guns for the robberies. He is not of the same level of
21  involvement as Mr. Melicharek. Mr. Pipolo is a businessman.
22  He, while he is carried as a Genovese associate, his
23  involvement in this case is far less than Mr. Melicharek, and
24  the 924(c) charge that he faces, it's a seven-year charge, it's
25  substantial, but it's not the 32-year charge that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19
7ANFMELC

1  Mr. Melicharek faces. Also, Mr. Melicharek is charged in all
2  four crimes that are alleged in this indictment. Mr. Pipolo is
3  charged in one.
4         I would like the opportunity to go through and
5  describe the crimes to your Honor, because I think a
6  description of that would demonstrate this defendant's danger
7  to the community.
8         THE COURT: Well, of course, your adversary in the
9  brief put in a very interesting paragraph where they charted
10 out all the cases, the recent cases in the organized crime area
11 where judges, of course, nonetheless granted bail with things
12 like murder charges and other violent charges, and you saw the
13 list just as I saw the list; the alleged boss of the Genovese
14 family, the alleged consigliere of the Bonano family, the
15 alleged Genovese acting underboss, soldiers, etc., etc. You
16 saw pages 6 and 7 was certainly a dramatic list of people who
17 have been admitted to bail.
18        MR. GRUENSTEIN: That's correct, your Honor. I'm
19 familiar with some of those cases, and, I mean, there are cases
20 on both sides.
21        THE COURT: Of course.
22        MR. GRUENSTEIN: And I think it's hard to go through
23 with a small tidbit as to what someone is charged with --
24        THE COURT: These aren't tidbits. These are no
25 people, anybody who reads the newspaper recognizes these names,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

                                    20
    7ANFMELC
1   as you know.
2          MR. GRUENSTEIN: As far as what they're charged with,
3   what the proof is against them.
4          THE COURT: I can't talk about the proof, I can only
5   talk about the charges. These were charges, as you know, of
6   murder and kidnapping and murder and drug distribution and the
7   rest of it. There's no doubt about it. I recall a good number
8   of these cases, which I would think you do, too.
9          MR. GRUENSTEIN: I certainly know some of them, your
10  Honor.
11         THE COURT: Right.
12         MR. GRUENSTEIN: And I know there are judges in this
13  district who have repeatedly said that someone's, the fact that
14  someone is a made member of an organized crime family is a
15  strong -- is strong evidence that they pose a danger to the
16  community. Because being in an organized crime family, they've
17  dedicated themselves to committing, to being part of a life of
18  crime.
19         Now, Mr. Melicharek, who is not Italian, is not a made
20  member of the Genovese crime family, but it's our information,
21  and we'll present this at trial, that he's a very high-ranking
22  associate, as high ranking as any non-Italian associate can be.
23  He's very close with Angelo Prisco, who is a captain in the
24  Genovese crime family. We have recorded conversations about
25  discussions of Mr. Melicharek kicking money up to Angelo
                 SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

21
7ANFMELC

1  Prisco. These crimes, the money that came from these crimes
2  went directly to Angelo Prisco.
3      I do want to talk about the charges here and the facts
4  of those cases, because this is a 924(c) case. There is a
5  presumption here, contrary to what Mr. Maringolo says, there is
6  a presumption there are no conditions and that's a presumption
7  set by Section 3142. Now, of course, the Court has to consider
8  it, but I think our starting point is there are no conditions.
9  Now, if Mr. Maringolo can rebut the presumption --
10     THE COURT: He didn't even think there was one.
11     MR. MARINGOLO: To us there isn't.
12     THE COURT: What do you mean to us? The law is the
13 law.
14     MR. MARINGOLO: Your Honor, he's presumed innocent as
15 he sits here.
16     THE COURT: No, no, no. That's not what presumption
17 is, you know that. There are certain charges that create a
18 presumption; that is not a condition of bail. There is a
19 presumption in this case.
20     MR. MARINGOLO: In defense to that, your Honor, the
21 FBI has made numerous visits to Mr. Melicharek over the last
22 two and a half years. These Hobbs Act robberies are from
23 September 28, 2003 and October 19, 2003, some four years ago.
24 We're not here to try the case your Honor --
25     THE COURT: I know that. But the weight of the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:07-cr-00907-SAS    Document 66-3    Filed 02/19/2008    Page 8 of 12

26
7ANFMELC
1   organized crime kicked up $1,500 of his portion to
2   Mr. Melicharek. That's the first charge.
3          So despite what Mr. Maringolo says about all the kind
4   acts he does in his community, this is certainly an egregious
5   act he committed in his community.
6          Now, September of 2003. This is the robbery that
7   Mr. Maringolo said he was at his son's football game. We don't
8   dispute he was at his son's football game. He very well may
9   have been. That's not necessarily the information that we
10  have, but the point is here that Mr. Melicharek was involved in
11  setting up the robbery. He didn't actually commit the robbery.
12  He set up the robbery because he knew that the owner of the
13  residence was a business owner. He knew that the owner of the
14  residence had engaged in several large cash transactions in the
15  last month, one of which was 100,000, the other of which was
16  50,000. Mr. Melicharek knew that man and it was precisely
17  because he knew the man that he couldn't be at the robbery. So
18  if he was at his football gave it doesn't undermine the proof
19  in that count.
20         Mr. Melicharek learned where the safe was in the
21  house, where the valuable coins were in the house and where the
22  guns were in the house. He conducted surveillance. He then
23  hired three people who were capable of committing violent acts,
24  three associates of organized crime, again, three Albanians who
25  did the job with Mr. Memoli. The family was at home, they were
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

27

7ANFMELC

1  sleeping at the time. These individuals who went into the
2  house, they tied up the victim and another person, they
3  handcuffed them, they used duct tape. Mr. Memoli had a gun, he
4  pistol whipped one of the victims when the individual didn't
5  open the safe. Eventually they took $80,000, they took
6  jewelry, they took guns and they took the coin collection. The
7  guns were ultimately recovered from Mr. Memoli's residence and
8  that's why Mr. Memoli has been in custody for the last four
9  years approximately serving a fifteen-year sentence for the
10 guns that were recovered in his house.
11         Again, the case is strong. We have recordings of
12 co-conspirators who were involved in this robbery discussing
13 the break-in. We have the victims who are ready to testify.
14         Again, this is another egregious act towards the
15 community, because Mr. Melicharek knew this individual. He
16 knew that this individual was wealthy, he knew he was a
17 business owner, and precisely for that reason, he targeted him
18 to steal his money.
19         Third, we have, this is counts three and four, as well
20 as the gun counts in count five. We have October of 2003 a
21 robbery in Orange County. Again, Mr. Melicharek knew of this
22 individual. Who was a somewhat well-known individual. He and
23 another co-conspirator thought, well, he's well known, he has a
24 cash business, he probably has cash in the house. So they
25 targeted his house to rob him. This was the robbery where

                                    28
       7ANFMELC
1    Mr. Pipolo provided the guns.  Mr. Melicharek was the one who
2    pulled the crew together, including the three Albanian men,
3    including Mr. Celaj, Mr. Gjelaj and another individual and
4    Mr. Melicharek's involvement again was that he was the driver.
5    He was not actually inside the house.
6           Again, the person in the house was tied up with duct
7    tape.  A fight broke out, and eventually the individuals left.
8           Again, the proof in this robbery is very strong.  We
9    have the victim who is ready to testify.  We have cooperating
10   witnesses.  We have cell site records showing various
11   co-conspirators in the area at the time of the robbery.
12          Again, another instance where Mr. Melicharek targeted
13   a member of the community only for the reason that that person
14   was wealthy, to take that person's money.  Fourth, again, very
15   strong count.  This is the count only in which Mr. Melicharek
16   was charged.  This is an undercover sting where a cooperating
17   witness told Melicharek about stolen goods that he had, a coin
18   collection that was worth approximately $17,000.
19   Mr. Melicharek, who was interested in engaging in any criminal
20   activity that was presented to him, he was part of the
21   conspiracy to fence, to sell this stolen property and he did.
22   Again, it's a stong, a very strong count.  We have the
23   cooperating witness, and these conversations are all recorded.
24   There's really, there's not much to that count that's left to
25   the imagination.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

56
7ANFMELC

1  point to me. That is while he has a job waiting for him at the
2  77 Hudson Street location, because assignments to work come
3  from the iron workers union, he might well be able to acquire
4  employment in Putnam County, or an adjacent --
5            THE COURT: Then he'll make that new circumstance
6  known to the court if and when it occurs.
7            MR. NELSON: Thank you, your Honor.
8            THE COURT: So this defendant will not be released
9  until all the conditions are met. The brother, sister and
10 father are here today, they can sign a bond before the
11 magistrate but he won't be released until, Mr. Gruenstein,
12 you're satisfied that all the paperwork, the investigation of
13 the house and all of that and the mother.
14           MR. NELSON: Okay.
15           THE COURT: So we're finished with that. So that
16 leaves Mr. Melicharek. I have been giving a good deal of
17 thought to that bail application and I'm not satisfied, not
18 satisfied that the bail package being proffered is sufficient
19 to assure this defendant's return to Court, which is the test.
20 That's the bottom line. That's the test, and at this time bail
21 is denied.
22           MR. MARINGOLO: Thank you, your Honor.
23           THE COURT: All right. Now are we done? I think we
24 are. Okay, thank you.
25           (Adjourned)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300