UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                     -vs-

LOUIS PIPOLO, et al.,

                                 Defendants.

S1 07 Cr. 907 (SAS)

--------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF THE
## PRE-TRIAL MOTIONS OF DEFENDANT LOUIS PIPOLO


February 15, 2008

Gerald B. Lefcourt, P.C.
Gerald B. Lefcourt
Sheryl E. Reich
Renato C. Stabile
148 East 78th Street
New York, NY 10075
Tel (212) 737-0400
Fax (212) 988-6192
Lefcourt@lefcourtlaw.com

*Attorneys for Louis Pipolo*

# TABLE OF CONTENTS

Table of Authorities.................................................................................................i

Introduction .......................................................................................................... 1

    A.    The Charges.................................................................................. 2

    B.    Pipolo's Background ............................................................... 3

    C.    Prejudicial Evidence Of Organized Crime Involvement........................... 3

    D.    Other Prejudicial Evidence ...................................................... 5

Point One:  Severance Of Pipolo's Trial Should Be Ordered Pursuant to
Fed.R.Crim.P. Rule 14 To Protect His Constitutional Right To A Fair Trial ................ 8

    A.    The Applicable Law ............................................................... 8

    B.    Pipolo Will Be Unfairly Prejudiced By A Joint Trial .............................. 10

    C.    Limiting Instructions Will Not Cure The Prejudicial Spillover................ 13

    D.    The Length Of A Joint Trial, Number Of Defendants And Judicial
Management Provide Further Support To Try Pipolo Separately ............ 14

Point Two:  The Government Should Be Ordered To Provide
Information Favorable To The Defense...................................................................... 17

Point Three:  The Forfeiture Allegation In The Superseding Indictment
Should Be Dismissed As To Pipolo .......................................................................... 18

Conclusion .......................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

### United States Supreme Court

*Zafiro v. United States,*
506 U.S. 534 (1993) ...................................................................................8, 9

### Second Circuit

*United States v. Alonso,*
143 F.3d 772 (2d Cir. 1998) .............................................................................19

*United States v. Branker,*
395 F.2d 881 (2d Cir. 1968) .............................................................................13

*United States v. Cardascia,*
951 F.2d 474 (2d Cir. 1991) .............................................................................13

*United States v. Casamento,*
887 F.2d 1141 (2d Cir. 1989) .....................................................................15, 16

*United States v. DiNome,*
954 F.2d 839 (2d Cir. 1992) .............................................................................12

*United States v. Mennuti,*
639 F.2d 107 (2d Cir. 1981) .............................................................................19

*United States v. Moten,*
564 F.2d 620 (2d Cir. 1977) ..............................................................................8

*United States v. Rodriguez,*
496 F.3d 221 (2d Cir. 2007) .............................................................................17

*United States v. Stavroulakis,*
952 F.2d 686 (2d Cir. 1992) .............................................................................19

*United States v. Tellier,*
83 F.3d 578 (2d Cir. 1996) ..............................................................................12

### Other Circuits

*United States v. Cortinas,*
142 F.3d 242 (5th Cir. 1998) ........................................................................12n

### District Courts

*United States v. Abrams,*
539 F. Supp. 378 (S.D.N.Y. 1982) ......................................................................9

*United States v. Bellomo,*
954 F. Supp. 630 (S.D.N.Y. 1997) ................................................................ 10

*United States v. Ferguson,*
No. 3 2008 WL 104078 (D. Conn. Jan. 4, 2008) ........................................ 17

*United States v. Gallo,*
668 F. Supp. 736 (E.D.N.Y. 1987) ........................................................ 9, 13, 16

*United States v. Gatien,*
1997 WL 661138 (E.D.N.Y. 1997) ........................................................ 10, 12

*United States v. Gotti,*
2004 WL 2423799 (S.D.N.Y. 2004) ...................................................... 10, 11

*United States v. Locascio,*
357 F. Supp. 2d 536 (E.D.N.Y. 2004) ........................................................ 10

*United States v. Praetorius,*
462 F. Supp. 924 (E.D.N.Y. 1978) ............................................................ 14

*United States v. Upton,*
856 F. Supp. 727 (E.D.N.Y. 1994) .......................................................... 9, 13

## STATUTES, RULES, ETC.

28 U.S.C. § 2461 ........................................................................................ 18

18 U.S.C. § 981(a)(1) ................................................................................ 18

Fed.R.Crim.P. Rule 7(c)(2) ...................................................................... 19n

Fed.R.Crim.P. Rule 12 .............................................................................. 20

Fed.R.Crim.P. Rule 14 ...................................................................... 1, 8, 11, 20

F.R.E. Rule 404(b) ................................................................................ 3n, 13

F.R.E. Rule 801(d)(2) .............................................................................. 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA,

               v.                           S1 07-CR-907 (SAS)

LOUIS PIPOLO, et al.,

                Defendants.
------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF THE
## PRE-TRIAL MOTIONS OF DEFENDANT LOUIS PIPOLO

### Introduction

       This memorandum is submitted by defendant Louis Pipolo ("Pipolo") in support of his

motion, pursuant to Fed.R.Crim.P. Rule 14 and his constitutional right to a fair trial, for a trial

severance from his seven codefendants.  Unlike Pipolo, with limited exceptions, each of the

codefendants is alleged to be associated with the Genovese Organized Crime Family and has a

history of violent crime.  Pipolo is neither alleged to be a member of organized crime nor has he

any history of violence.  Given the extremely limited role he is alleged in the indictment to have

played, and in only one of five separate schemes charged, a joint trial would subject Pipolo to a

great danger of being convicted not on the evidence, but as a result of spillover prejudice from

evidence not admitted against him.  For the reasons stated below, a severance should be granted

and Pipolo tried alone.  Additionally, Pipolo moves to dismiss the forfeiture allegation as to him

on the grounds that the government has stated that nothing of value was taken as a result of the

sole scheme in which he is alleged to have participated; and for an order requiring the government to produce documents favorable to the defense which were previously requested.

A.  The Charges

The Superseding Indictment in this case charges eight defendants, in different combinations, with conspiracy and substantive counts of extortion, robbery, and possession of a firearm in relation to the commission of a crime of violence.  Five separate criminal schemes are alleged: (i) a 2004-2005 extortion of a Manhattan business owner by members of the Genovese Organized Crime Family (Counts 1 and 2), as to which no allegations against Pipolo are made; (ii) a September 28, 2003, home invasion robbery in Morris County, New Jersey (the "Morris County robbery") (Counts 3 and 4), as to which no allegations against Pipolo are made; (iii) an October 19, 2003, home invasion robbery in Orange County, New York (the "Orange County robbery") (Counts 5 through 7), in which scheme Pipolo is alleged to have had a marginal role; (iv) a planned robbery in 2005 of a Manhattan business owner (Count 8), as to which no allegations against Pipolo are made; and (v) a plan to transport stolen gold coins (Count 9), as to which no allegations against Pipolo are made.  The only thread holding these diverse charges together is the alleged involvement of codefendant Melicharek in every one of them, and an alleged overarching, if nebulous, connection to "organized crime".

Pipolo is not alleged to be a member of organized crime.  And the role he is alleged to have had in the unsuccessful Orange County robbery was extremely limited – he is alleged to have been involved in the "planning" and to have provided guns to those who committed the robbery – although, evidently, no guns were used (*see infra*).  Unlike his codefendants, Pipolo is **not** alleged to have participated in any of the actual robberies or extortions.  Nor is there any

2

evidence that he participated in any uncharged crimes with the codefendants.[1]  And, save for the alleged participation of Melicharek, there is no allegation of any connection between and amongst any of the crimes charged – but for the claimed involvement of organized crime.

These facts pose a high risk that a jury hearing evidence of organized crime involvement in multiple violent crimes will not be able to limit the evidence to certain defendants.  This danger of spillover prejudice should lead this Court to sever Pipolo from his codefendants to prevent a conviction impermissibly based on guilt by alleged association.

B.  Pipolo's Background

Louis Pipolo is 45 years old and has been married to Julie Pipolo for 14 years.  He is a life-long resident of New York and he and his wife have lived in the same home since they married; Mrs. Pipolo's father now resides with them.  Pipolo is the principal owner of Mulino's of Westchester, a popular restaurant that employs approximately 30 workers.  Pipolo has a New York gun license and a New York liquor license, the conferral of each of which requires a rigorous background check.

C.  Prejudicial Evidence of Organized Crime Involvement

The government has asserted broadly that ". . . **these break-ins are '03, the extortion is '04 into '05, non-ancient history.  And it's all mob-connected…..This is all Genovese family activity.**" Hearing Tr. (12/12/07), annexed to the Affidavit of Sheryl E. Reich, Esq., sworn to

---

[1] As more fully detailed below, recorded conversations between and amongst other of the codefendants and un-indicted coconspirators suggest a variety of illegal activity which may well be offered by the government as part of one or more of the conspiracies with which Pipolo is not charged, or as F.R.E. Rule 404(b) evidence – none of which is admissible against Pipolo and none of which would be admitted in a separate trial of Pipolo.

February 14, 2008 ("Reich Aff."), as Ex. "C", 13-14 (emphasis added).[2] And that, no doubt, is how the government intends to try this case.

The government has at one time or another described virtually every defendant as having organized crime ties:   According to the government, John Melicharek, Michael Iuni, and Angelo Nicosia are all "members and associates of the Genovese Organized Crime Family." (Superseding Indictment ¶1).  Indeed, the government describes Melicharek as a "very high-ranking associate [in the Genovese Organized Crime Family], as high ranking as any non-Italian associate can be.  He's very close with Angelo Prisco, who is a captain in the Genovese crime family." Hearing Tr. (10/23/07), Reich Aff. Ex. "B", 20.

To emphasize the point, at Melicharek's bail hearing, the government presented audio recordings in which Melicharek is described by the government as talking "all about his mob connections";  "talking about helping to arrange a loan shark loan from Joey Leo, who's an associate of the Genovese family and the nephew of the boss of the family, Danny Leo"; and "[k]icking up money from a Genovese associate to his capo, a man named Angelo Prisco, who's Mr. Melicharek's capo in the Genovese family".  Hearing Tr. (12/12/07), Reich Aff. Ex. "C", 15-16.  Codefendant Dardian Celaj is described by the government as "hired muscle for the Genovese family." (Hearing Tr. (10/10/07), Reich Aff. Ex. "A", 23.  Codefendant Ened Gjelaj is described by the government as having been hired by the Genovese crime family to help in the robberies. *Id.*

_____

[2] For ease of reference, the annexed transcripts are annexed to the Reich Aff. chronologically, and so are ascribed letters out of sequence.

Though he is not charged with being a member of the Genovese crime family, however, did it stop the government from claiming, in its opposition to pre-trial release of Pipolo, that "Mr. Pipolo is a . . .Genovese associate". Hearing Tr. (10/23/07), Reich Aff. Ex. "B", 18-19.

   D. Other Prejudicial Evidence

The prejudicial evidence is not limited to claims that this is an "organized crime" case. We expect the government to seek to introduce evidence of violence by codefendants in charged and uncharged crimes. For example, with respect to Melicharek, the government has recited a lengthy history of violent crimes, including two gun possession charges (Hearing Tr. (10/10/07), Reich Aff. Ex. "A", 29; Hearing Tr. (12/12/07), Reich Aff. Ex. "C", 13. The government has asserted that Memoli pistol whipped the victim in the Morris County break in and is currently serving a 15 year sentence for possession of weapons taken from the Morris County home. Hearing Tr. (10/23/07), Reich Aff. Ex. "B", 27. Celaj was convicted of aggravated harassment. Hearing Tr. (10/10/07), Reich Aff. Ex. "A", 25, and at the time of his arrest in this matter, had outstanding warrants in two other cases. *Id.*

   Further, a glimpse at other violent activity that may be offered by the government is provided by recordings of conversations between and amongst some of the defendants, cooperating witnesses, and unindicted coconspirators, supplied by the government in discovery. Pipolo is not a participant to any of these conversations. The recordings capture the participants discussing violent criminal activity, none of it admissible against Pipolo. For example, in an April 20, 2004, conversation between Michael Visconti ("Visconti") and Edward Cobb ("Cobb"), both of whom are unindicted coconspirators in this case, the two discuss a scheme by which Cobb could recover monies he was owed by holding for ransom the son of "one of the five wealthiest guys in Brazil":

5

COBB:          Bring him upstate somewhere. Take him up into the Adirondacks. Cabin.

VISCONTI:      Take him to Newburgh.

COBB:          Well, go further north, where it's even quieter.

VISCONTI:      Put him in Cindy's garage for a fucking year.

COBB:          Yeah, that's, that's a good spot. You wouldn't need to keep him there more than three weeks, you'd have the money within two weeks. But that, that's another, the logistics, you know? They own banks so it's easy, you know? If anybody hears about this, this kid, you'll never see him again. We'll mail him back to you.

(snickers)

VISCONTI:      Piece by piece.

COBB:          But, now you gotta make sure the money is sent somewhere and,

VISCONTI:      Have Rocco pick it up.

ALL LAUGHING

COBB:          They'd fucking, they'd never see him coming, right?

Government draft transcript of CD # 50281, Reich Aff. Ex. "D", 26.[3] Later in the same

conversation, Visconti boasts about his violent inclinations: ". . . listen, I've always been a guy

that can take a bat and crack anybodies [sic] fucking head open in two seconds". *Id.* at 44 - 5.

---

[3] For purposes of these motions, we rely on the draft transcripts supplied by the government pursuant to a standard disclosure agreement. We recognize that the government is not bound by the draft and neither does Pipolo intend to suggest that he endorses the draft.

Visconti also talks about his attempt to stab somebody: "I'm lucky I didn't stab him. . . I was gonna fucking stab the guy". *Id.* at 56 - 7.[4]

Pipolo is not, and the Indictment does not allege him to be, a member of organized crime. He has a single prior conviction: in 2006, he pled guilty in the Town of Highland Justice Court, Orange County, New York, to a violation of Penal Law § 225.05 (promoting gambling in the second degree), an A misdemeanor.

---

[4] We do not mean to concede that these conversations would be admissible against codefendants, either. But we note that the Orange County break-in is both remote in time from these conversations and also of a circumspect nature such that the government would have considerable difficulty claiming that these conversations were in furtherance of the Orange County break-in. The other charges are both closer in time to these conversations and some are plead rather broadly (*e.g.*, Count 1, which charges Melicharek, Iuni and Nicosia with participating in a conspiracy "from in or about 2004 up to and including in or about February 2005"), allowing the government at least to argue for admission of a greater range of conversations it will claim were had in furtherance thereto.

**Argument**

**POINT ONE**

**SEVERANCE OF PIPOLO'S TRIAL SHOULD BE ORDERED
PURSUANT TO FED.R.CRIM.P. RULE 14 TO PROTECT HIS
CONSTITUTIONAL RIGHT TO A FAIR TRIAL**

Based on (i) the government's allegations that most of Pipolo's codefendants are members of organized crime; (ii) their history of violence; and (iii) Pipolo's limited alleged involvement in the Orange County robbery, Pipolo's predicament is similar to those of many other defendants who have been granted severances in other cases in this circuit.  To preserve Pipolo's right to a fair trial and to avoid the unfairness of spillover prejudice to Pipolo and confusion to the jury, his trial should be severed.  A trial of the allegations against Pipolo would be very short and would not require a substantial expenditure of resources to preserve his constitutional right to a fair trial.

A. The Applicable Law

Rule 14 of the Federal Rules of Criminal Procedure provides in pertinent part:

> [If] the joinder of . . .defendants in an indictment . . .appears to prejudice a defendant  . . .the court may . . .sever the defendants' trials or provide any other relief that justice requires.

As the Supreme Court observed in *Zafiro v. United States*, 506 U.S. 534 (1993), while "[t]here is a preference in the federal system for joint trials of defendants who are indicted together," severance must be granted where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 537, 539.

8

*Zafiro* announced no new law in the Second Circuit. As the Appellate Court explained in *United States v. Moten*, 564 F.2d 620, 627 (2d Cir. 1977), severance will be granted to avoid prejudice, even in the face of countervailing concerns of judicial economy:

> [w]e do not accept the proposition that because of the convenience of the Government, the conservation of judicial energy and the expense of multiple trials, the discretion of the United States Attorney in indicting numerous defendants . . . should be unfettered. There can be no litmus paper test depending upon the number of defendants and the expected length of trial. Rather the inquiry must be whether the defendants in this case . . . [will be] afforded a fair trial.

In making the determination on whether to order severance, then, a trial court is obliged to consider the following factors:

> (1) the number of defendants; (2) the number of counts; (3) the complexity of the indictment; (4) the estimated length of trial; (5) disparities in the amount or type of proof offered against each defendant; (6) disparities in the degrees of involvement by each defendant in the overall scheme; (7) possible conflict between various defense theories or trial strategies; and (8) prejudice from evidence admitted against co-defendants which is inadmissible or excluded as to a particular defendant.

*United States v. Upton,* 856 F.Supp. 727, 736 (E.D.N.Y. 1994) (citing *United States v. Gallo,* 668 F.Supp. 736, 748 (E.D.N.Y. 1987)). No one of these factors is dispositive; rather, each court must decide, on a case by case basis, whether severance is appropriate on the facts before it. Gallo, 688 F.Supp. 749.

The ultimate question for a court considering a severance motion is "whether the jury will be able to 'compartmentalize' the evidence presented to it, and distinguish among the various defendants in a multi-defendant suit." *United States v. Abrams*, 539 F.Supp. 378, 381 (S.D.N.Y. 1982). In the exercise of this discretion, district courts within the Second Circuit have granted severance where, as here, the danger to defendants of spillover prejudice from evidence

inadmissible against them impairs their right to a fair trial. *United States v. Bellomo*, 954

F.Supp. 630 (S.D.N.Y. 1997) (defendants severed from members of Genovese Organized Crime

Family); *United States v. Gatien*, 1997 WL 661138 (E.D.N.Y. 1997) (grating a severance where

large disparity of evidence and levels of culpability).

    B.   <u>Pipolo Will Be Unfairly Prejudiced By a Joint Trial</u>

    At virtually every appearance in this matter to date, and with no effort made to

differentiate between and amongst the defendants, the government has emphasized the

defendants' alleged ties to organized crime; their violent conduct; and their criminal histories.

Based on the government's conduct to date, we have little doubt that the government will seek to

introduce testimony concerning the identities, structure, membership, rules, and jargon of

organized crime families.[5]  Assuming, *arguendo*, such evidence is admitted here, it would

presumably be similar to such evidence in other cases.  There, it has included: (i) the names of

the organized crime families in New York; (ii) the ruling commission that governs all of the

families; (iii) the structure of the organized crime families; (iv) organized crime rules of conduct;

(v) the function of a "sit down" meeting among organized crime members; and (vi) organized

crime families' methods of controlling commercial businesses. *See, e.g., United States v. Gotti*,

2004 WL 2423799 *1 (S.D.N.Y. 2004) (discussing and admitting typical expert testimony on

organized crime offered by the government).

    In *United States v. Locascio*, 357 F. Supp.2d 536, 544 (E.D.N.Y. 2004), the government

sought to introduce "extensive evidence about the existence of the Gambino Crime Family and

the manner in which it functions".  Included in this presentation would be "certain acts of

violence relating to certain RICO defendants with alleged ties to the Gambino Family".  Three

---

[5] We do not concede that such evidence would be admissible.

non-RICO defendants moved pursuant to Rule 14 for severance from their RICO codefendants,

arguing that a joint trial would be prejudicial to their rights to a fair trial. Their argument rested

on the fact that evidence of an organized crime enterprise would be introduced at a joint trial, but

would be inadmissible if they were tried separately. In granting severance, the district court

noted that the non-RICO defendants would be prejudiced by the introduction of organized crime

evidence:

> Where the majority of defendants are alleged to have been either
> members of the [Gambino] Family or associated therewith, it
> would be very difficult for a jury to avoid carrying over these
> highly prejudicial allegations to those defendants who are neither
> charged with RICO activities, nor alleged to be affiliated with the
> Mafia.

*357 F. Supp.2d* 544 - 45.

While none of the defendants in this case is charged with RICO or RICO conspiracy,

given both the allegations in the Superseding Indictment that five of the defendants are

associated with the Genovese crime family, and the fact that the government has at every turn

emphasized that alleged association -- even as to Pipolo, though no such association is alleged in

the Superseding Indictment -- it is assumed that the government will offer mafia-type evidence

similar to what it would seek to introduce at a RICO trial. Here, as in *Locascio*, Pipolo would be

compelled to sit quietly for days or weeks of evidence of organized crime activity and other

violent conduct was introduced. The prejudice to him of a joint trial where such evidence is

introduced is precisely the harm sought to be avoided by Rule 14.

Nor was the district court's determination in *Locascio* that a joint trial would be unfair

singular. In *United States v. DiNome*, 954 F.2d 839, 844-45 (2d Cir. 1992), for example, the

Second Circuit reversed the convictions finding prejudice where the RICO counts against

particular defendants were dismissed during the trial, but who were still tried together with RICO

11

defendants and "all but an infinitesimal fraction of the evidence at [the] sixteen-month trial lost

any relevance to the mail and wire fraud charges against them.  Instead of being swamped by this

mass of irrelevant evidence, these charges should have been tried separately." *See also United

States v. Tellier*, 83 F.3d 578, 582 (2d Cir. 1996) (*citing DiNome*) ("defendants who no longer

face RICO charges should be severed so that the jury is not exposed to evidence that is irrelevant

to the remaining charges").

Similarly, in *United States v. Gatien, supra,* the district court granted severance to two

low-level employees (bouncers) of a nightclub who were charged with conspiracy to distribute

drugs with the owner (Gatien) and other high-level employees (Lewis) of the club.  Gatien and

Lewis, unlike the bouncers, were also charged with RICO violations.  The court, noting that the

trial was expected to take months and that the bouncers were not charged in the RICO counts,

observed that "[a] decision denying them severance would thus relegate them to sitting silently

by for extended periods of time while [the RICO] evidence is offered against Gatien and Lewis".

1997 WL 661138 at *3.  In granting the severance, the court noted:

> . . . that the extreme nature of the evidence that the Government
> apparently intends to introduce as part of its case-in-chief against
> Gatien will make it exceedingly difficult for the jurors to appraise
> the independent evidence against [the bouncers] and would, as a
> result, substantially compromise the ability of these defendants to
> receive a fair trial.

*Id.*[6]

Here, as in the cases cited above, at a joint trial of Pipolo and his codefendants,  Pipolo

will be exposed to the spillover prejudice, not only from evidence concerning transactions in

---

[6] *See also United States v. Cortinas*, 142 F.3d 242 (5th Cir. 1998) (convictions of two defendants
reversed where jurors may have confused membership in "Banditos Nation Motorcycle Club"
and participation in conspiracy).

which he is not allege to be involved, and not only from F.R.E. 404(b) evidence admitted against

others, but and in particular from the broad brush of "organized crime" with which the

government clearly intends to paint this case.

Courts in this Circuit have determined that such an "accumulation of evidence during the

course of the trial places the uninvolved defendants at risk of 'spillover' because the jurors may

not be able to prevent themselves from attributing the evidence to the uninvolved defendants."

*United States v. Upton,* 856 F. Supp. 727, 736 (E.D.N.Y. 1994); *see also United States v.*

*Cardascia,* 951 F.2d 474, 483 (2d Cir. 1991) (recognizing that appellants "may have suffered

some prejudice when they were forced to sit before the jury for over a month without any

evidence being introduced concerning their activities"); *United States v. Branker,* 395 F.2d 881,

888 (2d Cir. 1968) (spillover prejudice a concern for defendants "involved in only a small

proportion of the evidence").

Given the stark disparity in the alleged conduct of the defendants, the risk of prejudice in

a multi-defendant trial would severely undermine Pipolo's right to a fair trial.  Because the likely

introduction of evidence of organized crime, of which Pipolo is not a member, violence in which

he did not participate, and audio recordings on which he is never heard, Pipolo will be unfairly

prejudiced if he is required to stand trial with the other seven codefendants in this case.

Accordingly, the Court should grant his severance request.

C. Limiting Instructions Will Not Cure the Prejudicial Spillover

In moving for a severance, Pipolo recognizes the reluctance of courts to conduct multiple

trials if they can be avoided.  As Judge Weinstein stated in *United States v. Gallo, supra,* 668

F.Supp. 752, "[in] most cases, the jury system itself depends on the assumption that the jury will

follow the judge's instruction to limit consideration of some evidence to certain defendants".

However, in some cases, as stated by the late Judge Nickerson in *United States v. Praetorius*,

462 F.Supp. 924, 928 (E.D.N.Y. 1978):

> [t]o expect a jury to perform the intellectual feat in a joint trial of
> using such proof against [some] defendants but not against [others]
> is to ask too much of lay (and perhaps of judicial) minds.
> Accordingly a severance is appropriate.

In this case, no limiting instructions could be effective to protect Pipolo's right to a fair trial.

Five different and distinct schemes are charged, all of the participants overlap - except for

Pipolo. Accordingly, it will be impossible for jurors to segregate evidence in their minds –

particularly admissions and conconspirator statements admitted pursuant to F.R.E. Rule

801(d)(2) – admissible only to prove the Morris County robbery, from similar evidence

admissible only to prove the Orange County robbery. Moreover, the government's demonstrated

inability, or disinclination, to avoid casting each and every defendant here, including Pipolo, as a

member of organized crime, amply demonstrates that the fiction that the jury can parse the

evidence when even the government is unable to do so, is just that, a fiction.

Under these circumstances, an instruction to the jury that it could not consider the

organized crime evidence or evidence of the Morris County robbery conspiracy or extortion

conspiracy against Pipolo would be confusing, at best. It would be unfairly prejudicial to Pipolo

to ask a jury to parse out that portion of the evidence allegedly linking his codefendants to

organized crime, the Morris County robbery, and the extortion conspiracy from evidence

admissible against Pipolo.

D.      The Length of a Joint Trial, Number of Defendants and Judicial Management
        Provide Further Support to Try Pipolo Separately

The length of the trial and the number of defendants further supports the granting a

severance to Pipolo.

14

In *United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989), the Second Circuit cautioned against prejudice that defendants might face in long multi-defendant trials, expressing concern that the jury might not be able to evaluate the evidence appropriately and become resentful of the defendants because of the length of the proceedings. The court then set some "benchmarks" to be used in evaluating whether "the fair administration of justice will be better served by one aggregate trial of all indicted defendants or by two or more trials of groups of defendants." *Id.* at 1151.

The *Casamento* court reasoned:

> . . . in assessing the appropriate number of defendants for any trial in which the prosecution's case is likely to require more than four months to present, the judge should oblige the prosecutor to make an especially compelling justification for a joint trial of more than ten defendants. Even in the event that the aggregate time for separate trials would not be less than the time for a joint trial of all defendants, there are significant advantages to be achieved. The lives of each group of jurors would be imposed upon for a shorter time, there would be a smaller group of defense counsel in each trial with a consequent reduction in trial disputes, the trial judge would have a more manageable task, and the jurors' ability to focus on individual defendants would be enhanced.

887 F.2d 1152.

In this instance, the *Casamento* factors also support severance of Pipolo. The Superseding Indictment charges eight individuals with two home invasion robberies, extortion of a Manhattan business owner, a plot to rob the business owner, and conspiracy to transport stolen gold coins. Pipolo will be forced to sit through weeks of inflammatory, prejudicial testimony having nothing to do with him in a case where his alleged role is limited to "planning" and providing guns (which the victim never said he saw).

In contrast, a trial of Pipolo alone could be presented by the government in a matter of days.

15

Further, judicial management considerations support severance of Pipolo. *Id.* 887 F2d 1152. Severing Pipolo at trial reduces the number of lawyers in a trial from which they are severed. As the Second Circuit stated in *Casamento*, the result of severance "would be a smaller group of defense counsel in each trial with a consequent reduction in trial disputes." *Id.* Severance reduces an already large number of lawyers at *in limine* and trial conferences.

As Judge Weinstein discerned in addressing the judicial management benefits of severance:

> . . . sidebars are much more infrequent. Continuances and adjournments are less common. . . . [citation omitted].
>
> More significantly, the later trials are certain to be shortened or even precluded by the earlier trial or trials. The government will get a better sense of what is effective, and where the strength of its proof lies. Prosecutors are more aware of what the jury responds to, and what it ignores. The court itself becomes much more familiar with the nature of the case and the evidence, thus enabling more expeditious and more efficient rulings. Duplicative and cumulative evidence becomes easier to identify and exclude. The conspiracies can be verified more readily in motions under Rule 801(d)(2)(E) to admit coconspirators' statements. Each successive trail moves at a quicker and smoother pace than the last.
>
> Most important, there is a significant possibility that certain severed defendants may plead guilty after they have seen the government's method and quality of proof in the preceding trials. The imminence of their verdict will no doubt sharpen their judgment. The proof against them is crystallized in preparation for their trials, and thus a strong government case is more easily recognized.

*United States v. Gallo, supra,* 668 F.Supp. 757.

And, of course, as the Second Circuit observed in *Casamento*, "the jurors' ability to focus on individual defendants would be enhanced." *Casamento*, 887 F.2d 1152.

Finally, as noted in the section above, a severed trial for Pipolo would give the jury a heightened ability to focus on his extremely limited alleged role, as opposed to the inflammatory and prejudicial aspects of the organized crime evidence and other violent conduct.

## POINT TWO

### THE GOVERNMENT SHOULD BE ORDERED TO PROVIDE INFORMATION FAVORABLE TO THE DEFENSE

By letter dated January 17, 2008, we asked the government for the police report of the Orange County robbery on the grounds that we understood it contained information showing that Pipolo was not present at the robbery he is charged with committing and that no guns were present though Pipolo is charged with supplying the guns that were "possessed in furtherance of a crime of violence" (Count Seven). In response, the government produced the sworn statement of Robert Rosenberg, the victim of the events alleged generally as the Orange County robbery (Counts Six through Eight). In a follow-up letter dated January 24, 2008, we requested notes or the substance of any oral statements taken from that witness or any other witness that also reflected Pipolo's non-involvement in the crimes alleged. Specifically, we stated

> As you know, Mr. Rosenberg confirms that Mr. Pipolo was not a participant in the events that Mr. Rosenberg says occurred that evening, and further, that no weapons were used, brandished, or present. To the extent other persons have made similar statements to you or other law enforcement authorities, or have made any other statements that are favorable to Mr. Pipolo. As I am sure you are aware, you are obligated to disclose such statements even if no written record of such statements exists. *See United States v. Rodriguez*, 496 F.3d 221, 225-26 (2d Cir. 2007); *United States v. Ferguson*, No. 3:06Cr137, 2008 WL 104078 (D. Conn. Jan. 4, 2008) at *1-2.

Reich Aff. Ex. "E" at 1.

While at this stage we have no evidence the government has not endeavored to fulfill its legal obligations, the government has not responded to the request and we continue to believe that one or more cooperators (including Visconti and Cobb) have similarly told the government that Pipolo was (i) not a planner of the Orange County robbery; (ii) was not present at the Orange County robbery; (iii) to the extent any weapon was in fact possessed in furtherance of the Orange County robbery it was not a gun owned by Pipolo; and (iv) no gun was possessed by any person who entered the Orange County robbery house or grounds. We therefore respectfully request that the government be required to produce such statements to the extent it is in possession, custody or control of any such statements, whether recorded or not.

## POINT THREE

### THE FORFEITURE ALLEGATION IN THE SUPERSEDING INDICTMENT SHOULD BE DISMISSED AS TO PIPOLO

The Superseding Indictment provides notice that, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, the government will seek forfeiture upon conviction of $1,000,000 from all the defendants. Pipolo moves to dismiss the forfeiture allegation as to himself because the government has stated that nothing was stolen during the Orange County robbery, the only crime in which Pipolo was allegedly involved. Therefore, there is no factual basis for the claim.

That nothing of value was taken during the Orange County robbery has been stated repeatedly. At the initial appearance, for example, on October 10, 2007, the government conceded that, with respect to that alleged scheme, "they weren't successful in getting anything." Hearing Tr. (10/10//07), Reich Aff. Ex. "A", 24. That is consistent with the sworn statement of the sole person who was present in the Orange County house, Robert Rosenberg. *See* Reich Aff. Ex. "F".

We acknowledge that a pre-trial motion to dismiss pursuant to Fed.R.Crim.P. Rule 12 will normally be denied where an indictment is sufficient on its face. *See, e.g.*, *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) ("an indictment need do little more than to track the language of the statute charged").[7] Nevertheless, the Second Circuit recognizes an exception to that general rule where the government has made "a full proffer of the evidence it intends to present at trial". *United States v. Alonso,* 143 F.3d 772, 776-77 (2d Cir. 1998). In *Alonso,* the Second Circuit reversed the district court's dismissal of a Hobbs Act count based on the district court's determination that the government would be unable to prove an effect upon interstate commerce. The Second Circuit concluded that it was impermissible for the district court to look beyond the face of an indictment and to draw inferences as to the proof that would be introduced by the government at trial to satisfy the Hobbs Act's jurisdictional element -- ***unless*** the government has made "a full proffer of the evidence it intends to present at trial". *Id.* at 776. *See also United States v. Mennuti,* 639 F.2d 107 (2d Cir. 1981) (upholding dismissal of indictment where government had filed an affidavit making a full proffer of the evidence to be presented at trial).

Here, the government has already made a "full proffer" that there were no proceeds from the Orange County robbery. Based on the government's proffer, this Court may properly conclude that no evidence will be presented at trial to establish any forfeitable proceeds from the Orange County robbery. Accordingly, the forfeiture allegation as to Pipolo should be dismissed.

---

[7] Pursuant to Fed.R.Crim.P. Rule 7(c)(2), the forfeiture notice in the indictment is made by the government, not the grand jury. That distinction seems to us to create more flexibility by the court to dismiss, not less.

### Conclusion

For all of the reasons set forth above, Louis Pipolo respectfully requests that the Court order a trial severance for him pursuant to Rule 14 of the Federal Rules of Criminal Procedure and his constitutional due process right to a fair trial; require the government to produce evidence favorable to him pursuant to *Brady v. Maryland*; dismiss the forfeiture allegation pursuant to Rule 12 of the Federal Rules of Criminal Procedure; and grant any other or further relief which to the Court seems proper.

February 15, 2008

GERALD B. LEFCOURT, P.C.

By: _____

Gerald B. Lefcourt (GBL 5030)
Sheryl E. Reich (SER 7943)
Renato C. Stabile (RCS 8925)

148 East 78th Street
New York, N.Y. 10075
(212) 737-0400 (phone)
(212) 988-6192 (fax)
Lefcourt@lefcourtlaw.com (email)
*Attorneys for Louis Pipolo*