UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

UNITED STATES OF AMERICA,                    :
                                             :
          - v.-                              :
                                             :
JOHN MELICHAREK,                             :          S1 07 Cr. 907 (SAS)
          a/k/a "Rocky,"                     :
MICHAEL IUNI,                                :
DOMINICK MEMOLI,                             :
          a/k/a "Shakes,"                    :
ANGELO NICOSIA,                              :
LOUIS PIPOLO,                                :
DARDIAN CELAJ,                               :
          a/k/a "Danny,"                     :
ENED GJELAJ,                                 :
          a/k/a "Neddy,"          and        :
GJELOSH KRASNIQI,                            :
          a/k/a "Jimmy,"                     :
                                             :
                    Defendants.              :
                                             :
---------------------------------------------------------------x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANTS' PRE-TRIAL MOTIONS

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the United States of America

ELIE HONIG
JONATHAN NEW
Assistant United States Attorneys
          - Of Counsel -

## <u>TABLE OF CONTENTS</u>

THE INDICTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    I.      SEVERANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    II.     BILL OF PARTICULARS . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . .  16

    III.    IDENTIFICATION PROCEDURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

    IV.    DISCOVERY MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

    V.     ADDITIONAL MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

i

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

UNITED STATES OF AMERICA,                    :

                                                   :

         - v.-                                  :

                                                   :

JOHN MELICHAREK,                              :          S1 07 Cr. 907 (SAS)
        a/k/a "Rocky,"                     :
MICHAEL IUNI,                                 :
DOMINICK MEMOLI,                              :
        a/k/a "Shakes,"                    :
ANGELO NICOSIA,                               :
LOUIS PIPOLO,                                 :
DARDIAN CELAJ,                                :
        a/k/a "Danny,"                     :
ENED GJELAJ,                                  :
        a/k/a "Neddy,"          and        :
GJELOSH KRASNIQI,                             :
        a/k/a "Jimmy,"                     :

                                     :

                Defendants.              :

                                     :

-------------------------------------------------------------x

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PRE-TRIAL MOTIONS

       The Government respectfully submits this Memorandum of Law in opposition to the defendants' pre-trial motions.[1]  The motions collectively seek the following overarching categories of relief: (1) severance, in various combinations; (2) bill of particulars; (3) suppression of photographic identification; and (4) various discovery and disclosure requests.  For the reasons stated below, the defendants' motions should be denied.

### The Indictment

       The Indictment, S1 07 Cr. 907 (SAS), charges eight defendants in nine counts.

---

[1]  Defendants John Melicharek, Michael Iuni, Dominick Memoli, and Louis Pipolo have filed motions.  Defendants Angelo Nicosia, Dardian Celaj, and Ened Gjelaj have not filed motions.  Defendant Gjelosh Krasniqi has not been arrested.

Counts One and Two charge John Melicharek, Michael Iuni, and Angelo Nicosia, with extortion and extortion conspiracy, in violation of Title 18, United States Code, Sections 1951 and 2. As discussed more fully below, these charges relate to the extortion of approximately $50,000 from a Manhattan-based contractor.

Count Three charges Melicharek, Dominick Memoli, Dardian Celaj, Ened Gjelaj, and Gjelosh Krasniqi with Hobbs Act robbery conspiracy, in violation of Title 18, United States Code, Section 1951, and Count Four charges the same defendants with using or possessing firearms during or in furtherance of that crime of violence, in violation of Title 18, United States Code, Sections 942(c) and 2. As discussed more fully below, these charges relate to a September 28, 2003 home invasion in Morris County, New Jersey that was targeted at the owner of a scrap metal business.

Counts Five and Six charge the same five individuals charged in Counts Three and Four – Melicharek, Memoli, Celaj, Gjelaj, and Krasniqi – plus Louis Pipolo, with Hobbs Act robbery and robbery conspiracy, in violation of Title 18, United States Code, Sections 1951 and 2. Count Seven charges all six of those defendants with using or possessing firearms during or in furtherance of those crimes of violence, in violation of Title 18, United States Code, Sections 942(c) and 2. As discussed more fully below, these charges relate to an October 19, 2003 home invasion in Orange County, New York that was targeted at the owner of a motorcycle business.

Count Eight charges Melicharek with Hobbs Act robbery conspiracy, in violation of Title 18, United States Code, Section 1951. As discussed more fully below, this charge relates to an October 2005 conspiracy to rob a Manhattan-based business owner and drug dealer.

Count Nine charges Melicharek with conspiracy to transport stolen property

2

across state lines, in violation of Title 18, United States Code, Section 371. This charge relates

to the transportation and sale of gold coins from New Jersey to New York in October 2005.

**Argument**

**I.      Severance**

Numerous defendants seeks severance, in various combinations, pursuant

to Fed. R. Evid. 8 and 14. Specifically, the requests are as follows: (1) Iuni, who is charged in

the extortion counts, seek severance from his co-defendants who are charged in the robbery and

gun counts; (2) Pipolo, who is charged in the Orange County robbery and gun counts, seeks

severance from all other defendants on all counts, including the other defendants charged along

with Pipolo in the Orange County robbery and gun counts; and (3) Memoli, who is charged in the

Morris County and Orange County robbery and gun counts, seeks severance from the defendants

charged in the extortion counts, and seeks severance of the Morris County robbery and gun

charges from the Orange County robbery and gun charges.

The Court should deny the motions because all of the charged defendants and

crimes are part of a common scheme or plan. Moreover, none of the defendants remotely show

the level of potential prejudice necessary to overcome the strong presumption in favor of joint

trials. Any of the defendants' various severance proposals would necessitate substantial

duplication of effort and waste of resources, and would require the parties and the Court to try

this case several times over, with minimal resource savings from one trial to another.

**A.      Applicable Law**

Rule 8(a) of the Federal Rules of Criminal Procedure sets forth the standard

governing joinder of offenses, while Rule 8(b) governs joinder of charges. The Second Circuit

3

has interpreted the Rule to allow joinder of offenses and defendants where two or more persons'

criminal acts are "'unified by some substantial identity of facts or participants' or 'arise out of a

common plan or scheme.'" United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) (quoting

United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989)). See, e.g., United States v.

Cervone, 907 F.2d 332 (2d Cir. 1990) (proper joinder of eighteen defendants in a 102-count

indictment with a variety of labor racketeering charges, as well as related charges of obstruction

of justice, bribery, and making false statements); United States v. Weisman, 624 F.2d 1118 (2d

Cir. 1980) (proper joinder of charges and defendants where ten defendants charged with a variety

of offenses relating to creation, operation, and bankruptcy of a theater).

      Federal Rule of Criminal Procedure 14 authorizes the district court to grant a

severance of defendants' joint trial "[i]f it appears that a defendant or the government is

prejudiced by a joinder." Fed. R. Crim. P. 14(a). The Supreme Court has instructed that

severance is warranted only if "there is a serious risk that a joint trial would compromise a

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment

about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

      "For reasons of economy, convenience and avoidance of delay, there is a

preference in the federal system for providing defendants who are indicted together with joint

trials." United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003). The presumption in favor of

joint trials is so strong that this Court has stated that "[t]he principles that guide the district

court's consideration of a motion for severance usually counsel denial." United States v. Rosa, 11

F.3d 315, 341 (2d Cir. 1993). That presumption is particularly strong where, as here, "the crime

charged involves a common scheme or plan" among the defendants. United States v. Girard, 601

4

F.2d 69, 72 (2d Cir. 1979).  Accordingly, the Second Circuit consistently has permitted joinder of defendants and charges where the acts of the defendants share some identity of facts or participants, or arise from a common plan or scheme.  See United States v. Cervone, 907 F.2d 332 (2d Cir. 1990) (proper joinder of 18 defendants in 102-count indictment with a variety of labor racketeering charges, as well as related charges of obstruction of justice, bribery, and making false statements); United States v. Attanasio, 870 F.2d 809 (2d Cir. 1989) (defendants charged with conspiracy to defraud IRS properly joined with defendants and charges relating to a separate conspiracy to defraud IRS because of common participants and because they were part of a series of acts).

A defendant seeking severance therefore shoulders the "'extremely difficult burden'" of showing that he would be so prejudiced by joinder that he would be denied a fair trial.  United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989) (quoting United States v. Carpentier, 689 F.2d 21, 27 (2d Cir. 1982)).  The prejudice must be so "substantial" that there exists "a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence."  United States v. Rosa, 11 F.3d at 341.  It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]."  United States v. Zafiro, 506 U.S. at 540; see also United States v. Panza, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials").

It is well settled that "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials."  United

States v. Carson, 702 F.2d 351, 366-67 (2d Cir. 1983); United States v. Torres, 901 F.2d 205,

230 (2d Cir. 1990).  See also United States v. Zackson, 6 F.3d 911, 922 (2d Cir. 1993).

Similarly, "[t]he fact that evidence may be admissible against one defendant but not against

others does not require separate trials."  United States v. Rucker, 586 F.2d 899, 902 (2d Cir.

1978); see also United States v. Zackson, 6 F.3d at 922; United States v. Carson, 702 F.2d at 367.

Moreover, "[t]he fact that . . . codefendants [are] tried for a crime not committed

by another codefendant does not, without more, create the sort of miscarriage of justice that

would require a new trial."  United States v. Hernandez, 85 F.3d 1023, 1029 (2d Cir. 1996).

Rather, a defendant must show that evidence introduced against his codefendants would "in some

way affect[] the jury's ability fairly and rationally to evaluate the evidence of [the defendant's]

guilt."  Id. at 1029.  The Second Circuit has long held that "[e]vidence at the joint trial of alleged

co-conspirators that, because of the alleged conspiratorial nature of the illegal activity, would

have been admissible at a separate trial of the moving defendant is neither spillover nor

prejudicial."  Rosa, 11 F.3d at 341.  See also United States v. Spinelli, 352 F.3d 48, 55-56 (2d

Cir. 2003) (upholding denial of severance motion and denying prejudicial spillover claim where

"much of the evidence of [co-defendant's] crimes would have been admissible at a separate trial

of [defendant], since it was relevant to proving the nature and the scope of the conspiracy");

Rosa, 11 F.3d at 341 ("Evidence at the joint trial of alleged coconspirators that, because of the

alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial

of the moving defendant is neither spillover nor prejudicial."); United States v. Villegas, 899

F.2d 1324, 1347-48 (2d Cir. 1990) (rejecting claims that spillover evidence against co-defendants

prejudiced claiming defendants).  Any potential for prejudice is diminished where the court

instructs the jury to consider separately each individual and each charge.  United States v.

Spinelli, 352 F.3d at 55 (noting that spillover prejudice may be remedied by limiting instruction);

United States v. Miller, 116 F.3d 641, 679 (2d Cir. 1997) (same).

   Severance decisions rest in the District Court's discretion.  See Zafiro, 506 U.S. at

541.  A district court's ruling on a Rule 14 severance motion is entitled to such deference as to be

"virtually unreviewable."  United States v. LaSanta, 978 F.2d 1300, 1306 (2d Cir. 1992) (quoting

United States v. Cordascia, 951 F.2d 474, 482 (2d Cir. 1991)).  A district court's ruling on a

misjoinder under Rule 8(b) is subject to harmless error review and thus does not result in an

automatic reversal.  In United States v. Lane, 474 U.S. 438, 439 (1986), the Supreme Court held

that misjoinder only "affects substantial rights" and requires retrial only when there is "actual

prejudice" because it "had substantial and injurious effect or influence in determining the jury's

verdict."

### B.  Discussion

   The Government first addresses the motions for severance collectively, focusing

on general errors of fact and law made by multiple defendants.  The Government then turns to

the specific severance requests of each individual defendant.

#### 1.  Common Flaws In Defendants' Severance Arguments

   The defendants' severance arguments are, most fundamentally, based on two

crucial, mistaken factual premises:  (1) that the charged robberies, unlike the charged extortion,

had nothing to do with organized crime, and (2) that each of the charged crimes occurred in a

vacuum and were not part of a common scheme or plan.  In fact, organized crime evidence is

directly relevant to, and in an inextricable part of, the story of the extortion, as well as the

charged robberies.  Moreover, the Government will prove at trial that the robberies, like the other

charged crimes, were conducted as ongoing moneymaking endeavors of the Genovese Family,

specifically by the members of the crew of Genovese Family Captain Angelo Prisco.  The

members of Prisco's crew were engaged in an ongoing effort to identify and carry out "scores,"

or moneymaking opportunities, in whatever form they arose:  robberies, extortions, stolen

property schemes, or otherwise.  Indeed, the Government's evidence at trial, including several

recordings, will show that the members of Prisco's crew commonly talked to one another about

their "scores" – both historical and prospective, including the crimes charged here – and often

discussed how to obtain better results in their ongoing criminal endeavors.  The robberies – like

the charged extortion and stolen property crimes – were sanctioned by Prisco in his capacity as a

Genovese Family Captain or "Capo."  Proceeds from the successful crimes, whatever their

nature, were paid, or "kicked up" to Prisco as "tribute," in accordance with traditional organized

crime practice.

On an even more basic level, the Government will show that several of the

defendants and their co-conspirators knew one another by virtue of being associates of the

Genovese Family, in Prisco's crew.  Such evidence is plainly admissible, either in a joint trial of

all defendants and charges, or in any of the severed trials that the various defendants request.[1]

---

[1]     The Second Circuit has consistently upheld the admission of evidence that is a
necessary part of the story of the crimes charged, and that is designed to establish and explain the
existence of a relationship between co-conspirators.  For example, in United States v. Williams,
205 F.3d 23, 33-34 (2d Cir. 2000) (quoting Pitre, 9609 F.2d 1119), the Second Circuit upheld the
admission under Fed. R. Evid. 404(b) of the defendant's prior conspiracies with his co-
conspirators because "evidence of [defendant's] prior criminal conduct was relevant 'to inform
the jury of the background of the conspiracy charged, to complete the story of the crimes
charged, and to help explain to the jury how the illegal relationship between the participants in
the crime developed.'"  And in United States v. Diaz, 176 F.3d 52, 79-80 (2d Cir. 1999), the

Thus, defendants' core assumptions – that a trial involving the robbery charges alone would not involve evidence of organized crime, and that the charged crimes were not part of a common scheme or plan – are simply mistaken.

        The defendants' misjoinder arguments therefore fail.  Indeed, the Second Circuit has made clear that where, as here, the charged crimes were part of a "common scheme or plan," the charges are properly joined.  For example, in United States v. Attanasio, the Second Circuit found the "two [charged] conspiracies...sufficiently related for joinder" because, like the crimes charged here, they involved "a series of acts that shared a common purpose." 870 F.2d 809, 815 (2d Cir. 1989).  And in United States v. Cervone, the Second Circuit rejected the misjoinder claims of two RICO defendants as "frivolous" due to the "considerable overlap of their charged offenses."  907 F.2d 332, 340 n.2 (2d Cir. 1990).  The Court separately considered the misjoinder claim of a non-RICO defendant, Perna, who "was the only defendant charged in the two counts naming him," "was not charged in the RICO conspiracy count or in any of the underlying racketeering acts," and "was the only one of the eighteen defendants not charged jointly in any count in the indictment with a defendant named in the RICO count." Id. at 341.  The Court denied the severance motion as to Perna on the ground that the indictment tied Perna to one other defendant based on one specific act charged in a separate count.  Id.  None of the defendants or

---

Second Circuit upheld the admission of prior conspiracy evidence "because it informed the jury how the [conspirators'] conspiracy evolved, and how illegal relationships and mutual trust developed between co-conspirators."  See also United States v. Rosa, 11 F.3d 315, 334 (2d Cir. 1993) ("it is within the [trial] court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationships between participants in the crime developed, or to explain the mutual trust between co-conspirators").  Here, the Government will offer evidence of the defendants' organized crime-related activities for the same purposes as the Second Circuit repeatedly has found proper.

charges here lie nearly so far removed from the other defendants and charges as did Perna in
Cervone.

The defendants' prejudice arguments are similarly unavailing.  In United States v.
Garcia, 848 F.2d 1324, 1334 (2d Cir. 1988), the Second Circuit upheld the district court's
rejection of a non-RICO defendant's request for severance from RICO defendants charged with
multiple racketeering and narcotics trafficking counts.  If it is proper to try non-RICO defendants
together with RICO defendants, then, *a fortiori*, it is proper to try defendants charged with mob-
related robbery along with defendants charged with mob-related extortion and a mob-related
stolen property scheme.

Defendants also vastly overestimate the extent to which the Government intends
to introduce purportedly prejudicial organized crime evidence and prior crimes evidence.  Pipolo
and Memoli both misleadingly cite several statements made by the Government during prior bail
proceedings, including statements about various defendants' violent criminal histories.  (Pipolo
Mem. 5; Memoli Mem. 3).  While defendants' criminal histories, and histories of violence, were
certainly relevant to the bail proceedings, it by no means follows that the Government will
endeavor to introduce the full rap sheets of all defendants at trial; in fact, the Government will
offer no evidence about the defendants' prior crimes except those that fall within the strictures of
Rule 404(b).  Further, while evidence of organized crime association, generally speaking, was
clearly relevant to bail, the Government does not intend to introduce any more organized crime-
related evidence at trial than is absolutely necessary to explain the robberies and other charged
crimes to the jury.  For example, the Government does not intend to call an expert witness on
organized crime to elicit background testimony about the structure and function of organized

10

crime.  Nor does the Government intend to introduce surveillance evidence showing the

defendants interacting with other organized crime figures.  And, while the audio tapes that the

Government has produced in discovery contain extensive discussions by the defendants about

their organized crime connections, the Government intends only to play those portions that bear

directly on the robbery and the association between the defendants and their other co-

conspirators.  Thus, defendants' assertions regarding potential prejudice are unsupported and off

the mark.  Organized crime evidence is an essential part of the robbery crimes charged.  That

evidence, which the Government will introduce in a streamlined fashion,  would be just as

admissible in a severed trial of the robbery counts (or of certain defendants standing alone) as it

will be in the consolidated trial of all counts and defendants.

_____        With respect to all defendants, this Court can address any potential prejudice by

giving a proper limiting instruction.  Pipolo casually concludes, without binding authority, that a

jury might simply disregard any such instruction from this Court.  (Pipolo Mem. 13).  However,

as the Second Circuit has recognized, a jury is presumed to follow instructions, and an

instruction regarding spillover prejudice – like any limiting instruction – presumptively

diminishes any chance of undue prejudice.  See Spinelli, 352 F.3d at 55; United States v. Miller,

116 F.3d at 679.

Finally, as discussed more fully below for each defendant, any severance would

necessitate multiple, multi-week trials, and would entail significant duplication of effort and

waste of resources.

11

### 2.    Pipolo's Motion To Sever

Defendant Pipolo asks the Court to sever him from all of his co-defendants –

including those co-defendants charged in the same counts as Pipolo – and to conduct a separate

trial of Pipolo by himself.  That request rests on an incorrect and self-serving view of the facts of

the case, and would require the Court to conduct not one but at least two lengthy trials featuring

significant evidentiary overlap.  Pipolo fails to carry the "extremely difficult burden" required to

show entitlement to a separate trial, and the requested severance should be denied.  Casamento,

887 F.2d at 1149.

First, Pipolo overstates the nature of the purportedly prejudicial evidence the

Government will seek to introduce at trial.  As discussed above, the Government does not intend

to introduce extensive, RICO-style evidence of organized crime, as Pipolo seems to assume.

Rather, the Government will seek to introduce its evidence in a streamlined fashion, and will

introduce organized crime evidence only to the extent that it is a necessary and inextricable part

of the story of the charged crimes and the relationships among the defendants.

Pipolo claims that "the role he is alleged to have had in the unsuccessful Orange

County robbery was extremely limited – he is alleged to have been involved in the 'planning' and

to have provided guns to those who committed the robbery."  (Pipolo Mem. 2).  It is unclear

where Pipolo gets this information, but it is wrong.  The Government will prove that Pipolo was

more involved in the robbery, and that his involvement went well beyond the planning stages and

the provision of guns.

Pipolo also assumes, prematurely and incorrectly, that he is not alleged to have

participated in any uncharged crimes with his co-defendants.  In fact, the Government expects to

12

introduce Rule 404(b) evidence that Pipolo knew about, and was involved in, at least one other, uncharged robbery conspiracy, with several of the same co-defendants and other co-conspirators.

Pipolo claims that the interests of judicial economy will be served by severance, and that a trial of Pipolo alone will be "very short" and "could be presented by the government in a matter of days." (Pipolo Mem. 8, 14). That is wrong. In fact, a separate trial of Pipolo alone would take several weeks, and would in large part replicate the evidence at a trial against the remaining defendants. For example, a trial against Pipolo alone would involve testimony about the Orange County robbery from at least two cooperating witnesses, both of whom would also testify in a separate trial against the remaining defendants about that same robbery, as well as the other charged crimes. A separate trial of Pipolo would also require the victims of the Orange County robbery to testify not once, but twice – once at Pipolo's trial, and again at the separate trial against the remaining defendants. Similarly, the Government would need to introduce the same crime scene evidence through the same law enforcement officers once against Pipolo, and then again against the rest of the defendants. And a separate trial of Pipolo would require the Government to introduce and play several of the same recordings that it would play at a separate trial against the remaining defendants. In short, a separate trial of Pipolo would require the Court and the Government to try the Orange County robbery twice, and would involve a multi-week trial of Pipolo alone, as well as a longer, virtually-unchanged trial against the remaining defendants.

### 3.    Memoli's Motion To Sever

Memoli – who is charged with participating in both the Morris County and Orange County robberies, and both associated gun charges – seeks severance from the defendants

charged in the extortion, as well as severance of the Morris County robbery and gun charges from the Orange County robbery and gun charges.  (Memoli Mem. 7, 8).  Thus, Memoli's motion, if granted, would result in no fewer than three separate trials.

Memoli's motion to sever the Morris County charges from the Orange County robber charges is meritless.  Memoli's argument seems to be simply that the robberies occurred at different times and places.  (Memoli Mem. 8).  That argument can be made of virtually any two crimes, however.  In fact, as discussed above, both robberies were part of a common scheme and plan by the members of the Prisco crew to find and exploit moneymaking opportunities.  The two robberies occurred less than one month apart in 2003, and share at least five charged defendants in common:  Memoli, Melicharek, Celaj, Gjelaj, and Krasniqi, as well as other, uncharged, overlapping co-conspirators.  Moreover, much of the same proof – including testimony from the same cooperating witnesses, and the same audio recordings – will be introduced with respect to both robberies.

Memoli's prejudicial spillover argument rests on a serious underestimation of the evidence against him.  Memoli correctly anticipates that the Government's evidence will include cooperator testimony and audio recordings.  Yet Memoli somehow concludes that "none of  [this evidence] will relate to Mr. Memoli or the Home Invasion Counts."  (Memoli Mem. 14).  That is simply wrong.  Testimony from multiple cooperating witnesses, as well as audio recordings that the Government has produced to the defendants in discovery, bear directly on both Memoli himself and the two charged home invasions.  Memoli makes another factual mistake when he surmises that "[t]here are also significant disparities between Mr. Memoli and certain of his co-defendants in the amount of proof that will be offered against them."  (Memoli Mem. 13).  In

14

fact, much of the proof against Memoli will be the same as the proof against his co-defendants, including testimony from the same cooperating witnesses, testimony from the same victims, the same crime scene evidence, and the same audio recordings. If anything, this similarity in proof underscores the need for a joint trial, to avoid two (or three, as Memoli would have it) separate trials involving largely the same proof. If anything, in some respects there is more proof against Memoli than certain co-defendants; in particular, less than two months after the Morris County robbery, the police found four of the guns that had been stolen from the victim's home in Memoli's home, under Memoli's bed.

### 4.    Iuni's Motion To Sever

Iuni, who is charged in the extortion and extortion conspiracy but none of the robbery or gun charges, seeks severance because, Iuni claims, the robbery and gun charges are more serious than the extortion charges. Iuni's premise – that extortion is significantly less serious than robbery – is dubious. While the robbery allegations in this case do involve completed acts of physical violence, the charged extortion involves direct, personal threats of violence against both the primary victim and his family.

The Second Circuit routinely has upheld denials of severance requests even by one defendant joined with another co-defendant who was charged with much more serious offenses. For example, in United States v. DeVillo, 983 F.2d 1185, 1187-88, 1192 (2d Cir. 1993), defendants who were charged with non-violent offenses involving commercial burglary moved for severance from their co-defendants, who were charged with racketeering, racketeering conspiracy, six other burglaries, and an attempted murder. Defendants in that case argued that the racketeering conspiracy and acts of violence created a prejudicial "spillover effect." Id.

15

Citing the district court's "explicit limiting instruction to the jurors that . . . testimony [concerning violence] could not be used against" appellants, the Second Circuit rejected appellants' argument and upheld the district court's refusal to sever. <u>Id.</u> at 1192-93.  See also <u>United States</u> v. <u>Rosa</u>, 11 F.3d 315 (2d Cir. 1993) (defendants charged with non-violent offenses not entitled to severance from defendants charged with acts of violence).   If, as in <u>DeVillo</u> and <u>Rosa</u>, a defendant charged only with non-violent crimes can properly be tried along with a co-defendant charged with attempted murder without undue prejudice, it is hard to see how the defendants charged with extortion here are prejudiced by joinder with other defendants who committed robberies.

Iuni also raises a Rule 8 argument for severance that fails for the same reasons discussed above.  The charged extortion was part of a common scheme or plan that also included the other charged crimes; the extortion was one in a connected series of moneymaking endeavors carried out by and for the Prisco crew.[1]

## II.    Bill of Particulars

Numerous defendants seek detailed bills of particulars, including Melicharek, who has served a boilerplate, 110-part request for particulars that far exceeds the scope of evidentiary detail to which the defendants are entitled.  The Government – in the Indictment, in the discovery, and in its statements on the record before this Court – has provided the defendants with ample detail regarding the specifics of the charged crimes.  Those disclosures are sufficient

---

[1]    Iuni also seeks severance on the basis of <u>Bruton</u> v. <u>United States</u>, 391 U.S. 123 (1968). (Iuni Mem. 4-5).  However, as Iuni acknowledges, <u>Bruton</u> concerns the use of a post-arrest admission by one defendant against a co-defendant.  The Government does not intend to offer any such post-arrest admissions at trial here.

to put the defendants on notice of the charges against them, to enable the defendants to prepare a

defense, and to enable the defendants to assert a claim of double jeopardy in future prosecutions

for the same conduct.  For these reasons, the defendants' request for a bill of particulars should

be denied.

A.    **Applicable Law**

The proper scope and function of a bill of particulars is to furnish facts,

supplemental to those contained in the indictment, necessary to apprise the defendant of the

charges against him with sufficient precision so as to enable him to prepare her defense, to avoid

unfair surprise at trial, and to preclude a second prosecution for the same offense.  Fed. R. Crim.

P. 7(f); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990); United States v. Bortnovsky,

820 F.2d 572, 574 (2d Cir. 1987); United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

"Those are the only legitimate purposes of a bill of particulars."  United States v. Sindone, 01 Cr.

517 (MBM), 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002).  A bill of particulars should not be

used to acquire 'evidentiary detail.'" United States v. Livoti, 8 F. Supp. 2d 246, 249 (S.D.N.Y.

1998).

If the information the defendant seeks "is provided in the indictment or in some

acceptable alternate form," such as discovery or other correspondence, no bill of particulars is

required.  Bortnovsky, 820 F.2d at 572; United States v. Spy Factory, 960 F. Supp. 684, 690-91

(S.D.N.Y. 1997).  Accordingly, the ultimate test is whether the information sought is necessary,

not whether it is helpful.  See United States v. Lauerson, No. 98 Cr. 1134 (WHP), 1999 WL

440619, *3 (S.D.N.Y. June 28, 1999); United States v. Percan, No. 98 Cr. 392 (AGS), 1999 WL

13040, *5 (S.D.N.Y. Jan. 13, 1999).

17

A bill of particulars is not a general investigative tool for the defense, <u>United States</u> v. <u>Salazar</u>, 485 F.2d 1272, 1277-78 (2d Cir. 1973), nor a device to compel disclosure of the Government's evidence prior to trial.  <u>See, e.g.</u>, <u>Sindone</u>, 2002 WL 48604, at *1; <u>United States</u> v. <u>Gottlieb</u>, 493 F.2d 987, 994 (2d Cir. 1974).  The vehicle of a bill of particulars serves to inform a defendant of the nature of the charge, when he is otherwise insufficiently informed, and must not be misused to compel disclosure of how much the Government can prove, nor to foreclose the Government from using proof it may develop as the trial approaches.  <u>See United States</u> v. <u>Henry</u>, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense.").  A bill of particulars should not be used to learn evidentiary detail, <u>see Torres</u>, 901 F.2d at 234, the precise manner in which the charged crimes were committed, <u>see United States</u> v. <u>Andrews</u>, 381 F.2d 377, 377-78 (2d Cir. 1967), the manner in which the Government will prove the charges, <u>see United States</u> v. <u>Leonelli</u>, 428 F. Supp. 880, 882 (S.D.N.Y. 1977), all the overt acts in furtherance of a conspiracy, <u>see United States</u> v. <u>Carroll</u>, 510 F.2d 507, 509 (2d Cir. 1975), or particular acts that a particular defendant participated in, had knowledge of, or for which he is being held responsible, <u>see United States</u> v <u>Jimenez</u>, 824 F. Supp. 351, 363 (S.D.N.Y. 1993).

There are several reasons for this restricted use of a bill of particulars.  First, the Government need not provide information tantamount to an itemized preview of its proof because of the danger in criminal cases that the defendants will tailor their testimony to explain away the Government's pre-disclosed case.  <u>See United States</u> v. <u>Cimino</u>, 31 F.R.D. 277, 279 (S.D.N.Y. 1962).  Second, detailed inquiries into the Government's case repeatedly have been

18

rejected because they would unduly restrict the Government in presenting its proof at trial.  See, e.g., Jimenez, 824 F. Supp. at 363; United States v. Goldman, 439 F. Supp. 352 (S.D.N.Y. 1977). Courts in this District have consistently held that, because a bill of particulars "confines the Government's proof to particulars furnished, requests for a bill of particulars should not be granted where the consequence would be to restrict unduly the Government's ability to present its case." United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987); United States v. Culoso, 461 F. Supp. 128, 134 n.9 (S.D.N.Y. 1978) ("Bills of particulars are not justified where the only purpose they would serve would be to limit the Government's proof or allow the defendant to tailor his testimony to meet the Government's evidence").

### B.    Discussion

The Indictment and other materials produced by the Government provide the defendants with ample facts to apprise the defendants of the charges against them, with sufficient precision so as to enable them to prepare their defense, to avoid unfair surprise at trial, and to preclude a second prosecution for the same offense.  Fed. R. Crim. P. 7(f); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990).  For the convenience of the Court and the defendants, the Government summarizes those facts below.

### 1.    Counts One and Two: Extortion and Extortion Conspiracy

As set forth in the Indictment and the materials produced to date, the extortion and extortion conspiracy occurred from 2004 up to and including February 2005.  The primary victim was Stephen Galise, owner of a contracting business located on Mulberry Street in Manhattan. The defendants successfully collected approximately $50,000 in extortionate proceeds, which was paid, in cash installments, over the course of the charged time period.

19

    **2.**    **Counts Three and Four: Morris County Robbery Conspiracy, and Firearms**

As set forth in the Indictment and the materials produced to date, the robbery conspiracy existed in September 2003, and the robbery and firearm possession occurred on September 28, 2003.  The robbery occurred at 68 Valley Road in Rockaway Township, New Jersey.  The intended victims included John Southard, who was the owner of Southard Salvage, a scrap metal business that was engaged in interstate and international commerce.

    **3.**    **Counts Five, Six, and Seven: Orange County Robbery, Robbery Conspiracy, and Firearms**

As set forth in the Indictment and the materials produced to date, the robbery conspiracy existed in October 2003, and the robbery and firearm possession occurred on October 19, 2003.  The robbery occurred at 2937 Albany Post Road in Montgomery, New York.  The intended victims included Paul Teutel, Sr., who was an owner of Orange County Choppers, a motorcycle business that was engaged in interstate and international commerce.

    **4.**    **Count Eight: Manhattan Robbery Conspiracy**

As set forth in the Indictment and the materials produced to date, the robbery conspiracy existed in October 2005.  The intended victim was the owner of a Manhattan-based business located on 39th Street, which was engaged in interstate and international commerce.  The owner was also involved in trafficking large quantities of illegal drugs.

    **5.**    **Count Nine: Conspiracy To Transport Stolen Goods**

As set forth in the Indictment and the materials produced to date, the conspiracy existed in October 2005.  The participants in the conspiracy were involved in an effort to transport and sell goods that they believed to have been stolen, including Kruggerands, which are

valuable gold coins from South Africa.[1]  The co-conspirators, including Melicharek, agreed to and did transport the coins from New Jersey to New York, and sold the coins for approximately $17,000.

Given these specific facts already made available to the defendants, no further particularization is required.  The defendants' remaining requests far exceed the proper scope of a bill of particulars.  For example, requests for information about the identities of unnamed co-conspirators, dates and locations of conspiratorial acts, and other detailed acts, routinely have been denied.  Torres, 901 F.2d at 233-34; Colson, 662 F.2d at 1391; Wilson, 565 F. Supp. at 1438-39.  As the Second Circuit has explained, a bill of particulars is not a general investigative tool for the defense, United States v. Salazar, 485 F.2d 1272, 1277-78 (2d Cir. 1973), nor a device to compel disclosure of the Government's evidence prior to trial.  See, e.g., Sindone, 2002 WL 48604, at * 1; United States v. Gottlieb, 493 F.2d 987, 994 (2d Cir. 1974).  For all these reasons, and given the Government's detailed disclosures to date (which are summarized above), the Court should deny the defendants' request for a bill of particulars.

## III.    Identification Procedures

Iuni claims that a lineup containing his photograph, along with the photographs of five other, remarkably similar-looking men, was unduly suggestive.  In fact, the lineup was anything but suggestive, and easily satisfies the standards established by the Second Circuit.

### A.    Applicable Law

The Constitution requires the exclusion of a prior identification only if it is "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant]

---

[1]  As the Government has stated on the record, this charge is the result of a sting operation run by the FBI.

[is] denied due process of law." United States v. DiTommaso, 817 F.2d 201, 213 (2d. Cir. 1987).

In response to a defendant's challenge to identification testimony, the Court must undertake a

"sequential inquiry" to determine "whether either the prior identification or an in-court

identification of the defendant at trial is admissible."  Raheem v. Kelly, 257 F.3d 122, 133 (2d

Cir. 2001).  First, the Court must assess "whether the pretrial identification procedures unduly

and unnecessarily suggested that the defendant was the perpetrator."  Id.  A "photo array is

improperly suggestive if 'the picture of an accused, matching descriptions given by the witness,

so stood out from all of the other photographs as to suggest to an identifying witness that [the

accused] was more likely the culprit.'"  United States v. Eltayib, 88 F.3d 157, 166 (2d Cir. 1996)

(quoting United States v. Thai, 29 F.3d 785, 808 (2d Cir. 1994)).  If no suggestiveness is shown,

the inquiry ends and there is "no due process obstacle to admissibility."  Id. (citations omitted).

On the other hand, if the Court finds that the Government employed a suggestive identification

technique, the inquiry turns to "whether the identification was nonetheless reliable."  Id.

     **B.**    **Discussion**

        Iuni alleges that the photo array was unduly suggestive for two reasons:  (1) "Iuni

is the only individual with a completely shaved head, all of the others, although having shortly

cropped or balding heads are not completely shave [sic]" (Iuni Br. 3), and (2) "the photograph of

[Iuni] is noticeably older than the other five individuals" (Iuni Br. 3).

        Iuni's contentions are meritless.  The photo array – a copy of which is attached as

Exhibit B to Iuni's motion – features six photographs of equal size, brightness, and clarity.  All

six photographs depict males of approximately the same skin color, age, build, hair, and facial

features.  The contention that Iuni has slightly less hair than some of the other individuals

22

pictured – which is a debatable factual premise to begin with – is no more remarkable than any other individual characteristics displayed by any of the six individuals pictured, and does not render the array so unnecessarily suggestive as to justify suppression of the identification. Indeed, Iuni, like every individual pictured, is somewhere between bald and near-bald; if anything, this attribute serves to unite the six photographs and to make it more difficult to distinguish one photograph from the next.

Iuni's second argument - that he appears to be older than the other individuals shown - is also questionable as a factual matter.  Clearly, all of the individuals are in the same age range, and it is difficult if not impossible to tell who is the oldest individual shown. Moreover, even if Iuni were the oldest individual shown, the disparity is nowhere near enough to render the identification constitutionally defective.[1]  Given that Iuni has not shown any suggestiveness, there is "no due process obstacle to admissibility" and the Court should deny the motion without further proceedings.  Eltayib, 88 F.3d at 166.

## IV.    Discovery Motions

Various defendants seek various forms of discovery, summarized below.  As discussed below, the Government has provided all that the defendants are entitled to at this stage in the case.  If anything, the Government has erred on the side of early, broader disclosure.  To

---

[1]    Even if the Court were to find that the defendant's photograph somehow did stand out from the other photographs in the array in some sense, the identification still may be admissible. See, e.g., United States v. Archibald, 734 F.2d 938 (2d Cir.) (although the defendant's photo was the only one that had a plate showing that he was arrested in Manhattan, the identification was still admissible), modified on other grounds, 756 F.2d 223 (2d Cir. 1984); United States v. DiPalermo, 606 F.2d 17, 21 (2d Cir. 1979) (identification admissible in a narcotics case where only the defendant's picture had a DEA label).

23

the extent the Government has not yet made certain disclosures, it will do so sufficiently in

advance of trial, and in accordance with the dates already set by this Court.

### 1.    Brady and Giglio Materials

The Government is well aware of its <u>Brady</u> and <u>Giglio</u> obligations, and has fully

complied with those obligations to date.  The Government already has produced certain materials

pursuant to those disclosure obligations, including witness statements by two of the robbery

victims, which arguably do not constitute <u>Brady</u> or <u>Giglio</u> materials, but which the Government

has produced in an abundance of caution.  The Government will continue to make any required

disclosures as it becomes aware of any additional information.  This representation is sufficient

to satisfy the Government's current <u>Brady</u> obligations.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Underwood</u>,

2005 WL 927012, 04 Cr. 424 (RWS) (S.D.N.Y. Apr. 21, 2005) ("The courts of this Circuit

repeatedly have denied pretrial requests for discovery orders pursuant to <u>Brady</u> where the

government has made such good faith representations.").[1]

### 2.    Confidential Informants

Melicharek next asks that the Government identify any confidential informants.

Melicharek's request, however, is so imprecise as to be unanswerable.  It is entirely unclear what

Melicharek means by "confidential informants."  Melicharek appears to use that same general

phrase to refer to several different groups of individuals, including testifying cooperating

witnesses, "alleged victims," and "alleged co-conspirators."  (Melicharek Br. 15).  In any event,

this Court has already ordered that the Government identify its cooperating witnesses, and

---

[1]    Pipolo offers an overly broad view of what <u>Brady</u> and <u>Giglio</u> require.  For example, evidence that Pipolo did not personally own the guns used in the Orange County robbery is irrelevant and in no way exculpatory.  (Pipolo Mem. 18).

produce their criminal histories, by June 2008 (which is more than a month before trial starts). The Government will comply with that schedule.

Melicharek also requests that the Government make all confidential informants available to the defense. Again, that request is so non-specific as to be incapable of a precise answer. The Government will make any cooperating witness that it does not intend to call in its case in chief available to the defendants as trial witnesses. However, Melicharek tellingly cites no authority for the request to have pre-trial access to the Government's cooperating witnesses for the purpose of conducting exploratory interviews.[1]

### 3.    Expert Witnesses

The Government will make the required expert notice and disclosures to the defendants sufficiently in advance of trial.                         .

### 4.    Audio Recordings

The Government has provided approximately 15 audio recordings to the defendants, as well as draft transcripts for approximately half of those recordings to date. The Government will continue to provide draft transcripts as they are prepared. Those transcripts identify the specific passages of the recordings that the Government may use at trial. The transcripts also identify the speakers in the conversations (which information was already

---

[1]    The defendants should not, of course, be permitted to impeach the credibility of any non-testifying confidential informants or cooperating witnesses, unless the statements of those witnesses are offered for their truth. In United States v. Regan, 103 F.3d 1072, 1083 (2d Cir. 1997), the Second Circuit held that "[w]e have previously made clear that a district court need not allow impeachment of even a 'central figure' whose out-of-court statements were not admitted for their truth." Similarly, in United States v. McGowan, 58 F.3d 8, 15 (2d Cir. 1995), the defendant argued that he should have been entitled to impeach a non-testifying witness who was a "central figure" in the trial. The Second Circuit upheld the District Court's decision to preclude such impeachment because the "central figure" was not a witness at trial, and his out-of-court statements were not admitted for their truth. Id.

provided to the defendants with respect to many of the recordings in the discovery cover letters that accompanied production).

Memoli reasonably requests that the Government identify which audio recordings it intends to introduce at trial by June 6, 2008. (Memoli Mem. 17). The Government agrees to make such identifications by that proposed date.

### 5. Rule 404(b) Materials

Several defendants request immediate production of Rule 404(b) materials. This Court has already ordered that the Government disclose all such materials to the defendants, and brief their admissibility to the Court, by June 6, 2008. The Government does intend to introduce evidence under Rule 404(b) at trial, including the participation by numerous defendants – including Melicharek, Pipolo, Memoli, Celaj, and Gjelaj  – in other, uncharged home invasions and robberies.

## V.    Additional Motions

### 1. Iuni's Commerce Clause Claim

Iuni asks the Court to dismiss the extortion and extortion conspiracy charges based on United States v. Lopez, 115 S.Ct. 1624 (1995), claiming that this Court lacks jurisdiction because the Indictment does not sufficiently allege that the extortion impacted interstate commerce. (Iuni Mem. 14-16). Iuni fails to note that the Indictment specifically charges that the extortion "did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce." (Indictment ¶¶ 4, 6). The Government will prove at trial that Iuni and his co-conspirators specifically targeted the owner of a contracting business that was

26

engaged in interstate and international commerce, and in fact succeeded in extorting money from that business.

It is well established that "the burden of proving nexus to interstate commerce is minimal." United States v. Elias, 285 F.3d 183, 188 (2d Cir. 2002)(citing United States v. Shareef, 190 F.3d 71, 72 (2d Cir. 1999)); see also United States v. Fabian, 312 F.3d 550, 554 (2d Cir. 2002)(citing cases for proposition that only de minimis showing necessary to establish interstate nexus required for Hobbs Act jurisdiction). Under Second Circuit law, "if the defendant's conduct produces any interference with or effect upon interstate commerce, whether slight, subtle, or even potential, it is sufficient to uphold a prosecution under the Hobbs Act." United States v. Perrotta, 313 F.3d 33, 36 (2d Cir. 2002)(quoting Jund v. Town of Hempstead, 941 F.2d 1271, 1285 (2d Cir. 1991)(emphasis in original)).

Iuni asks this Court to break from this well-settled precedent and impose a higher standard for the interstate commerce element. However, the Second Circuit repeatedly has rejected the same Lopez argument that Iuni makes here. In United States v. Elias, 285 F.3d 183 (2d Cir. 2002), the Second Circuit upheld the defendant's Hobbs Act conviction based on a robbery of a "neighborhood grocery store" that "sold beer brewed in Mexico and fruit grown in Florida and California." Id. at 185-86. The defendant in Elias argued that Lopez required a heightened showing from the Government that the robbery had impacted interstate commerce in more than a minimal or indirect fashion. The Elias Court rejected that argument:

> Even after United States v. Lopez, this Court (along with other Circuits) has continued to hold that the Hobbs Act requires no more than a de minimis impact on interstate commerce. Our reasoning has been that the Hobbs Act regulates activities which, in the aggregate, have a substantial effect on interstate commerce; hence, the de minimis character of individual instances arising under the statute is of no consequence.

27

Id. at 188 (internal citations and quotation marks omitted); see also United States v. Vasquez, 267 F.3d 79, 88 (2d Cir. 2001)("we have previously held that Lopez did not heighten the minimal interstate commerce requirement for prosecution of Hobbs Act [cases].""); United States v. Farrish, 122 F.3d 146, 148 (2d Cir. 1997)("We now expressly hold that Lopez did not raise the jurisdictional hurdle for bringing a Hobbs Act prosecution."). Thus, the issue Iuni raises has already been squarely raised, and rejected, by the Second Circuit.

  **2. Pipolo's Forfeiture Claim**

   Pipolo asks the Court to dismiss the forfeiture allegation relating to the Orange County robbery, citing the Government's statement that the participants "weren't successful in getting anything." (Pipolo Mem. 18). First, the forfeiture portion of the Indictment is merely a notice provision, and Pipolo is free to contest any forfeiture judgment at the time of sentencing. In any event, while the defendants charged with the Orange County robbery were unsuccessful in stealing what they initially set out to steal – several hundred thousands of dollars in cash that was stored inside the home – further investigation has revealed that the defendants did steal various

28

items of jewelry, which forms a basis for forfeiture against Pipolo and the other defendants

charged in the Orange County robbery.

## **<u>CONCLUSION</u>**

For all these reasons, the Government respectfully submits that the defendants'

motions should be denied.

Dated:  New York, New York
        March 5, 2008

                                    Respectfully submitted,

                                    MICHAEL J. GARCIA
                                    United States Attorney


                          By:    _____
                                    Elie Honig
                                    Jonathan New
                                    Assistant United States Attorneys
                                    (212) 637-2474 / 1049

29

<u>CERTIFICATE OF SERVICE</u>

ELIE HONIG deposes and says that he is employed in the Office of the United

States Attorney for the Southern District of New York, and that on March 5, 2008, he caused a

copy of the foregoing Government's Memorandum of Law in Opposition to Defendants' Pretrial

Motions to be served by ECF and e-mail on all counsel for all defendants listed in the caption

attached to this motion.


I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C.

Section 1746.


_____
ELIE HONIG

Executed on: March 5, 2008
New York, New York