UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                      -vs-

LOUIS PIPOLO, et al.,

                                                Defendants.

-------------------------------------------------------------------X

S1 07 Cr. 907 (SAS)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT LOUIS PIPOLO'S PRE-TRIAL MOTIONS

March 19, 2008

Gerald B. Lefcourt, P.C.
Gerald B. Lefcourt
Sheryl E. Reich
Renato C. Stabile
148 East 78th Street
New York, NY 10075
Tel (212) 737-0400
Fax (212) 988-6192
Lefcourt@lefcourtlaw.com

*Attorneys for Louis Pipolo*

## TABLE OF CONTENTS

Table of Authorities .................................................................................................... ii

1. The Evidence Of Organized Crime That The Government
   Intends To Introduce As "Background Evidence" Will Unfairly
   Prejudice Pipolo ............................................................................................... 2

   a. Introduction ................................................................................................ 2

   b. The Government's Faulty Legal Analysis ................................................. 3

2. Even A "Streamlined" Presentation Of Organized Crime
   Evidence Will Unfairly Prejudice Pipolo ...................................................... 10

3. Duplication Of Effort In A Separate Trial For Pipolo
   Is Not A Sufficient Reason To Deny Severance In This Case ...................... 12

Conclusion ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Federal Cases**

*United States v. Cervone*,
907 F.2d 332 (2d Cir. 1990) .................................................................................. 6, 7

*United States v. Diaz*,
176 F.3d 52 (2d Cir. 1999) ......................................................................................... 5

*United States v. DiNome*,
954 F.2d 839 (2d Cir. 1992) ....................................................................................... 6

*United States v. Gallo*,
668 F.Supp.2d 736 (E.D.N.Y. 1987) ....................................................................... 13

*United States v. Garcia*,
848 F.2d 1324 (2d Cir. 1988) ................................................................................ 6, 8

*United States v. Livoti*,
196 F.3d 322 (2d Cir. 1999) ....................................................................................... 4

*United States v. Locascio*,
357 F.Supp.2d 536 (E.D.N.Y. 2004) ..................................................................... 8, 9

*United States v. Pitre*,
960 F.2d 1112 (2d Cir. 1992) ..................................................................................... 4

*United States v. Rosa*,
11 F.3d 315 (2d Cir. 1993) ..................................................................................... 5, 6

*United States v. Tellier*,
83 F.3d 578 (2d Cir. 1996) ......................................................................................... 6

*United States v. Williams*,
205 F.3d 23 (2d Cir. 2000) ......................................................................................... 4

**Federal Rules**

Fed.R.Crim.P. 14 .................................................................................................... 1, 2

F.R.E. Rule 404(b) .................................................................................................. 3, 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA,

            v.                                        S1 07-CR-907 (SAS)

LOUIS PIPOLO, et al.,

           Defendants.
------------------------------------------------------X

### REPLY MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT LOUIS PIPOLO'S PRE-TRIAL MOTIONS

This Memorandum of Law is submitted on behalf of defendant Louis Pipolo ("Pipolo") in reply to the government's consolidated response to the several pre-trial motions submitted by Pipolo and several of his codefendants. This reply focuses on the government's opposition to Pipolo's motion for a severance pursuant to Fed.R.Crim.P. 14.[1] Pipolo seeks a severance from his codefendants to avoid the threat of prejudice that will occur at a joint trial where the government intends to introduce evidence of organized crime activity. Unlike most of his codefendants, Pipolo is not alleged to be a member of organized crime and the government makes no claim otherwise in its response.

The government opposes Pipolo's severance motion on the grounds that Pipolo overstates the organized crime evidence the government will offer at trial; understates his role in the Orange County robbery; incorrectly states that the government will not seek to

---

[1] As to the remaining motions, we reply on the initial moving papers.

introduce evidence of uncharged crimes against him; and underestimates the length an individual trial of the charges against him would take. (Gov't Br. 12-13). The government also argues that Pipolo will not be unfairly prejudiced by the government's intended evidence of organized crime, since, according to the government, such evidence would be admissible against him at an individual trial. *Id.* at 8-9. For the reasons discussed herein and in Pipolo's opening Memorandum of Law, a balancing of all of these factors supports a severance.

1. **The Evidence Of Organized Crime That The Government Intends To Introduce As "Background Evidence" Will Unfairly Prejudice Pipolo**

    a.  Introduction

    The government argues that the defendants should be tried together because all the crimes alleged in the Superseding Indictment are part of "a common scheme or plan" (Gov't Br. 9), in that they "were conducted as ongoing moneymaking endeavors of the Genovese Family, specifically by the members of the crew of Genovese Family Captain Angelo Prisco." (Gov't Br. 8). Accordingly, the government plans to introduce evidence that the crimes charged in the Superseding Indictment were committed in furtherance of organized crime activity and "were sanctioned by Prisco in his capacity as a Genovese Family Captain or 'Capo.'" *Id.* The government also intends to introduce evidence to show that "several of the defendants and their co-conspirators knew one another by virtue of being associates of the Genovese Family, and Prisco's crew." *Id.* No such evidence has any relevance to Pipolo, since (i) he is not alleged to be associated with the Genovese Crime Family in general or a member of Angelo Prisco's "crew" specifically; (b) he is charged in only one of the supposed ongoing endeavors, and therefore, there is no reason to link it to the other crimes charged to prove his involvement in the one crime in which

he is charged; (iii) the government will be able to prove a relationship between Pipolo and uncharged co-conspirator Michael Visconti (including that they were codefendants in a state gambling case) independent of any association with organized crime; and (iv) to the extent the government will seek to show that Pipolo was acquainted with any of the other defendants, there is no need to, or basis to, resort to organized crime proof.

The government proposes that "such evidence is plainly admissible" as "a necessary part of the story of the crimes charged" (Gov't Br. 8 n.1). The government overlooks the fact that organized crime evidence is a special, and highly prejudicial, type of background evidence which is legally distinct from the evidence discussed in the cases relied on by the government. Instead, this evidence has been the basis of severances pursuant to Rule 14 in numerous cases, many of which were discussed in Pipolo's opening memorandum.

    b.    <u>The Government's Faulty Legal Analysis</u>

We start by noting that the government concedes it cannot prove that Pipolo is a member of organized crime. The government argues, nevertheless, that evidence of organized crime would be admissible against Pipolo even if he were severed from his codefendants because "organized crime evidence is directly relevant to, and in an inextricable part of... the charged robberies." (Gov't Br. 7-8). In support of its argument, the government relies on cases in which F.R.E. Rule 404(b) evidence – but not organized crime evidence – was admitted as "background" evidence to explain to the jury the relationship between and amongst the defendants or to "complete the story" of the crimes charged. *Id.* None of the cases cited by the government, however, involved introduction of the type of highly prejudicial organized crime evidence the government seeks to

introduce in this case. To the contrary, cases in the Second Circuit have repeatedly treated organized crime evidence as a special, particularly prejudicial, type of "background" evidence, not normally admissible against defendants who are not alleged to be members of organized crime and have ordered severances on that basis. For that reason, the cases relied on by the government are inapplicable.

For example, in *United States v. Williams*, 205 F.3d 23 (2d Cir. 2000) (Gov't Br. 8 n.1), defendant Williams was convicted of conspiring with two friends to import a kilogram of cocaine. At trial, his two co-conspirators cooperated with the government against him. Pursuant to F.R.E. Rule 404(b), the government introduced evidence that in 1994, Williams participated in a marijuana deal with his co-conspirators, that in 1995, Williams and one of his co-conspirators had committed credit card fraud, and that in 1996, Williams and one of his co-conspirators caused the third co-conspirator to be arrested on false charges of assault. *Williams*, 205 F.3d at 33. The Second Circuit held that evidence of Williams's prior criminal conduct with his co-conspirators was relevant "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed" (*quoting United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir.1992)), and that there was "no undue prejudice under Rule 403 [since] the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction." *Id.* at 33-34 (*citing United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999)). Not only was there no organized crime evidence at issue in *Williams*, but the two cases upon which the Second Circuit relied, *Pitre* and *Livoti*, were also not organized crime cases.

4

The government also relies on Second Circuit decisions involving RICO prosecutions, in which evidence was introduced to prove the existence and operation of a racketeering enterprise. While this case is not a RICO prosecution and Pipolo is not alleged to be a member of organized crime, the government seeks to introduce RICO-style evidence to complete the "story" of the crimes charged.

Thus, the government cites *United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999) (Gov't Br. at 8 n.1), a case in which the defendants were convicted of RICO, RICO conspiracy and various violent and drug-related associated offenses in connection with their membership in the Latin Kings organized crime enterprise. *Diaz*, 176 F.3d at 72-73. The defendants in *Diaz* **conceded** that they were associated with the Latin Kings (*id.* at 80), but challenged the introduction of 404(b) evidence of past violent gang activity on both relevance and prejudice grounds. The Second Circuit concluded that the evidence had properly been admitted as background evidence "because it informed the jury how the Latin Kings' racketeering and drug conspiracies evolved, and how illegal relationships and mutual trust developed between co-conspirators" and because the probative value of the evidence was not outweighed by the danger of unfair prejudice. *Id.* at 80. Therefore, *Diaz* is distinguishable because it was a RICO prosecution in which the defendants were alleged to be – and admitted being – associated with the Latin Kings. Pipolo is neither alleged to be, nor admits to being, a member of organized crime.

The government's reliance on *United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993), also a RICO case, is similarly misplaced. In *Rosa*, the defendants were convicted of various narcotics, racketeering, and weapons offenses, which were committed through a narcotics organization known as the "Unknown Organization." *Rosa*, 11 F.3d at 323-24.

5

The government introduced evidence of prior crimes committed by Rosa and the leader of the organization, Melendez, "to explain how the illegal relationship between the two had developed and to explain why Melendez had appointed Rosa to a leading position in the Organization." *Id.* at 334. The Second Circuit held that the introduction of this evidence was proper because it was "within the court's discretion to admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *Id.* Furthermore, the district court had instructed the jury that the evidence was being admitted against Rosa only "to establish the Melendez-Rosa association" (*id.*), not against Rosa's seven codefendants.

The government also relies on two cases, *United States v. Cervone*, 907 F.2d 332 (2d Cir. 1990), and *United States v. Garcia*, 848 F.2d 1324 (2d Cir. 1988), in both of which the Second Circuit affirmed the convictions of non-RICO defendants who were tried with RICO codefendants. (Gov't Br. 9-10). Those cases, too, do not make the government's case. As an initial matter, we note that *Cervone* and *Garcia* were both decided **prior** to *United States v. DiNome*, 954 F.2d 839 (2d Cir. 1992), and *United States v. Tellier*, 83 F.3d 578 (2d Cir. 1996), the cases relied on by Pipolo in which the Second Circuit reversed the convictions of non-RICO defendants who were tried with RICO codefendants. *See* Pipolo Opening Br. 11-12; *Tellier*, 83 F.3d at 582 (*citing DiNome*) ("defendants who no longer face RICO charges should be severed so that the

6

jury is not exposed to evidence that is irrelevant to the remaining charges").[2] It is not at all clear that either case survives the later Second Circuit decisions in this area. And, quite aside from whether *Cervone* and *Garcia* are still good law, both cases are entirely distinguishable on their facts.

*Cervone* was a labor union corruption case that did not involve the type or degree of violence allegedly committed by Pipolo's codefendants in this case. There is also no indication in the *Cervone* opinion that the case involved organized crime activity. In *Cervone*, relying on the very high standard of review applied to severance decisions, the Second Circuit affirmed the district court's denial of Perna's (a non-RICO defendant) Rule 14 severance motion. The Second Circuit concluded that Perna's right to a fair trial was not violated by the danger of spillover prejudice because he was "accused of analytically discrete instances of corrupt interaction with Cervone and Local 13, each of which easily could have been considered separately by the jury." *Cervone*, 907 F.2d at 342.

Perna, unlike Pipolo, was the only defendant charged in the two counts naming him. He was not charged in the RICO conspiracy count or in any of the underlying racketeering acts, and he was the only one of the eighteen defendants not charged jointly in any count in the indictment with a defendant named in the RICO count. *Id.* Accordingly, as the Second Circuit recognized, it was easy for the jury to distinguish Perna from his codefendants. In this case, Pipolo is charged in the Orange County robbery along with five of his codefendants, all of whom – with the exception of Pipolo –

---

[2] Second Circuit decisions reversing lower court refusals of Rule 14 severance motions are few and far between certainly because, as the Second Circuit has recognized, "a motion under [Rule 14] is committed to the sound discretion of the trial court and is '"virtually unreviewable."' *Cervone*, 907 F.2d at 341 (citations omitted).

are also charged in the Morris County robbery (Pipolo is not), all of whom were allegedly present at both robberies (Pipolo is not), and most of whom are alleged by the government to be members or associates of the Genovese Organized Crime Family (Pipolo is not). Thus, unlike Perna, it will not be so easy for the jury to separate Pipolo analytically from his codefendants.

Finally, the government relies on *United States v. Garcia*, 848 F.2d 1324 (2d Cir. 1988). *Garcia* was a RICO prosecution of the members of a drug distribution organization, but, like *Cervone*, was not a traditional "organized crime" case and did not involve the same type of allegations of violence and mafia-related activity as does this case. In addition, all of the counts in the indictment concerning the non-RICO appellants in *Garcia* were also charged in the RICO count as predicate racketeering acts. *Garcia*, 848 F.2d at 1333. The Second Circuit upheld the district court's denial of a Rule 14 severance motion by one of the non-RICO defendants (who was acquitted on the conspiracy count), citing the relatively small number of defendants, the straightforward nature of the proof, the similarity of the charged offenses, and the short trial. *Id.* at 1334.

Unlike the Rule 404(b) or "background" evidence admitted in the cases relied on by the government, the government's proposed "background" evidence of mafia involvement here would elevate substantially the seriousness of the government's case, well beyond what it would be for a trial of the Orange County robbery alone. That is so because evidence of organized crime membership is in and of itself recognized as highly prejudicial. *See, e.g., United States v. Locascio*, 357 F.Supp.2d 536, 544-45 (E.D.N.Y. 2004) ("the mere association with a Mafia family is, in itself, highly prejudicial. Where the majority of defendants are alleged to have been either members of the Family or

associated therewith, it would be very difficult for a jury to avoid carrying over these highly prejudicial allegations to those defendants who are neither charged with RICO activities, nor alleged to be affiliated with the Mafia").

In *Locascio*, the district court severed the trial of three non-RICO codefendants, those not alleged to be members of organized crime, from their organized crime codefendants. In *Locascio*, just as in this case, the government argued that severance was unnecessary because it intended to introduce evidence of organized crime activity at a severed trial of the three non-RICO defendants, since "the organized crime evidence [was] in itself proof of the commission of the substantive crimes" charged against them. *Id.* at 544. The district court assumed, for purposes of deciding the severance motion, that some organized crime evidence would be admissible at a separate trial, but granted a severance nevertheless because "[t]he evidence as to organized crime, if admissible at all, would be extremely limited in scope and purpose and would not generate the level of prejudice that would result from a joint trial...[m]oreover, any prejudice which might result if some limited evidence of organized crime were admissible would be more easily controlled where both the charges alleged and the number of defendants are smaller. The jury's ability to keep track of the evidence as it corresponds to the various defendants would be significantly enhanced..." *Id.* at 545. Here, while the government might be permitted to introduce evidence of prior individual crimes participated in by Pipolo for Rule 404(b) purposes – which the government claims it intends to do (Gov't Br. at 12-13)[3] – evidence of the connection to, workings, and structure of the Genovese Organized

---

[3] We do not, of course, know what evidence the government will seek to introduce pursuant to Rule 404(b), or, more to the point, whether the Court will allow such evidence to be admitted. To deny a severance on the expectation that some unidentified evidence will be admitted pursuant to

9

Crime Family would be both irrelevant and unduly prejudicial as to Pipolo alone, who is not alleged to be a member of organized crime. Moreover, as in *Locascio*, even if some more limited amount of organized crime evidence were admissible at trial of Pipolo alone, it would be far easier for the jury to compartmentalize the purposes for which that evidence might be admitted.

2.   **Even A "Streamlined" Presentation Of Organized Crime Evidence Will Unfairly Prejudice Pipolo**

The government seeks to persuade this Court that the organized crime evidence it will offer will be "streamlined" and that Pipolo "overstates" the nature of the purportedly prejudicial evidence the government will seek to introduce at trial. (Gov't Br. 12). According to the government, "the Government does not intend to introduce extensive, RICO-style evidence of organized crime, as Pipolo seems to assume. Rather, the Government will seek to introduce its evidence in a streamlined fashion, and will introduce organized crime evidence only to the extent that it is a necessary and inextricable part of the story of the charged crimes and the relationships among the defendants." (Gov't Br. at 12).

With respect, the government's position is unreasonable. First of all, this Court has both an obligation to prevent the introduction of *any* prejudicial evidence, and the opportunity to do so. We are not here in a post-trial posture with an appellate court having to determine whether the quantity of prejudicial evidence is sufficient to warrant a new trial.

Moreover, the theory on which the government intends to try this case – that all of the crimes charged in the Superseding Indictment "were conducted as ongoing

---

Rule 404(b), which evidence will render seemingly prejudicial evidence not prejudicial, is a thin reed indeed upon which to risk Pipolo's fundamental right to a fair trial.

10

moneymaking endeavors of the Genovese Family, specifically by the members of the crew of Genovese Family Captain Angelo Prisco" (Gov't Br. at 8) – will require extensive evidence concerning the organization and operations of the Genovese Crime Family if it is to make any sense to the jury.

The government cannot reasonably expect to try this case on the theory it proposes without presenting, for example, the following evidence, which is based on the government's own factual recitation of the evidence it intends to introduce at trial (Gov't Br. at 8):

- What is the Genovese Crime Family?
- Where does it operate?
- What does it do?
- What is the structure of the Genovese Crime Family?
- Who runs it?
- Who are its members?
- How does one become a member?
- What are the rules of conduct of the Genovese Crime Family?
- What is the difference between a "member" and an "associate"?
- What is a "Capo" or "Captain"?
- How does one become a "Capo" or "Captain"?
- What is a "crew"?
- Who is Angelo Prisco?
- What is his position?
- How did he come to hold the position he holds?
- Who is in Prisco's crew?
- What does Prisco's crew do?
- What is a "tribute"?
- Why is a "tribute" paid?
- What happens if the "tribute" does not get paid?
- What is the relationship between the defendants and Prisco?
- What does it mean for a crime family to control illegal activity in its territory?
- How does it maintain control?

In this case, introduction of Genovese Crime Family evidence will create a substantial danger of unfair prejudice to Pipolo, who has an Italian name, owns a popular Italian restaurant, and is the cousin and business partner of Louis Gigante, a nephew of

11

Vincent "the Chin" Gigante, the late alleged boss of the Genovese Crime Family (to whom Pipolo is also related). Even though the government does not allege Pipolo to be a member of organized crime, these facts, though perfectly innocent, heighten the danger that Pipolo will be unfairly prejudiced by the organized crime evidence the government intends to introduce in this case. Added to the "background" organized crime evidence the government seeks to introduce, the tape recorded evidence (not of Pipolo) reveals discussions about stabbing people, baseball bat beatings, and features some of the alleged co-conspirators laughing about kidnapping, murder, and dismemberment. *See* Pipolo Opening Br. 5-7. None of those conversations involves Pipolo. Some of Pipolo's codefendants also have violent criminal histories, which Pipolo does not. And, on top of all of this, is the undeniable fact that the government has already shown a proclivity to smear Pipolo with the stigma of organized crime, even in the absence of either an allegation of it or any proof. Pipolo Opening Br. 3-4.

Accordingly, this case is much more similar to those cited by Pipolo in which defendants who were not members of organized crime and not involved in acts of violence, were severed from their codefendants to avoid the danger of spillover prejudice. *See* Pipolo Opening Br. 10-13.

3.  **Duplication Of Effort In A Separate Trial For Pipolo Is Not A Sufficient Reason To Deny Severance In This Case**

The government also argues that "any of the defendants various severance proposals would necessitate substantial duplication of effort and waste of resources, and would require the parties and the Court to try the case several times over, with minimal resource savings from one trial to another." (Gov't Br. 13). While the government claims that a separate trial of Pipolo alone would take "several weeks" (Gov't Br. 13), we are

constrained to question that assertion. At heart, Pipolo stands accused of lending support to a serious, but hardly complex, garden-variety robbery routinely prosecuted in the state courts. The allegations against Pipolo are simple and straightforward. Unquestionably, whenever a severance is granted there will be some duplication of effort on the part of the government and the court. But that is merely one factor of many that must be weighed against Pipolo's right to a fair trial. Certainly, if that were the sole consideration, no court would never grant a severance. Moreover, as courts have recognized, severance may have the effect of actually conserving resources, since "there is a significant possibility that certain severed defendants may plead guilty after they have seen the government's method and quality of proof in the preceding trials." *United States v. Gallo*, 668 F.Supp.2d 736, 757 (E.D.N.Y. 1987). In this case, the unfair prejudice of organized crime evidence, none of which is admissible against Pipolo, will violate Pipolo's right to a fair trial.

## Conclusion

For all of the reasons set forth herein and in Pipolo's February 15, 2008, Memorandum of Law, Louis Pipolo respectfully requests that the Court grant the severance; require the government to produce evidence favorable to him pursuant to *Brady v. Maryland*; dismiss the forfeiture allegation pursuant to Rule 12 of the Federal

Rules of Criminal Procedure; and grant any other or further relief which to the Court seems proper.

March 19, 2008

                                      Respectfully submitted,

                                      GERALD B. LEFCOURT, P.C.

                                      By: _____
                                            Gerald B. Lefcourt (GBL 5030)
                                            Sheryl E. Reich (SER 7943)
                                            Renato C. Stabile (RCS 8925)

                                      148 East 78th Street
                                      New York, N.Y. 10075
                                      (212) 737-0400 (phone)
                                      (212) 988-6192 (fax)
                                      Lefcourt@lefcourtlaw.com
                                      *Attorneys for Louis Pipolo*